**In the Matter of Christine Frances Jackson BISHOP, Bankrupt.**

**ROANOKE INDUSTRIAL LOAN AND THRIFT CORPORATION, Appellant,**

v.

**Christine Frances Jackson BISHOP, Appellee.**

No. 72-2216.

United States Court of Appeals, Fourth Circuit.

Submitted April 4, 1973.

Decided July 18, 1973.

Dale Myers, Roanoke, Va., on brief, for appellant.

Franklin Pierce Pulley, III, Roanoke, Va., on brief, for appellee.

Before BUTZNER, RUSSELL and FIELD, Circuit Judges.*

* This case originally was submitted on briefs to a panel over which Senior Circuit Judge Sobeloff presided. He did preliminary work on the opinion, but unfortunately illness prevented his completing it.

PER CURIAM:

Roanoke Industrial Loan & Thrift Corporation appeals from an order of the district court which denied its petition to stay the discharge in bankruptcy of Mrs. Christine J. Bishop while it brought suit in state court to subject property owned by Mr. and Mrs. Bishop as tenants by the entirety to its claim of indebtedness. We affirm the order denying the stay.

Mrs. Bishop and her husband had purchased an outboard motorboat and trailer costing $3,313. They paid $413 down and jointly executed a note for $4,041 representing the balance due, creditor life insurance premiums, and finance charges. The seller assigned the note without recourse to Roanoke along with a purchase money security interest. After paying eight installments aggregating $674, the Bishops defaulted on the note. Roanoke repossessed the boat and its equipment, credited the proceeds from its resale in the amount of $2,000 on the debt, and claimed a deficiency of $1,088 including costs. Several months after the sale, but before Roanoke obtained a judgment for the deficiency, Mrs. Bishop filed a voluntary petition in bankruptcy.

■■■ Mr. and Mrs. Bishop owned a house and lot as tenants by the entirety. Under Virginia law, as at common law, a creditor of both husband and wife may subject property held by the entirety to their joint debt, but a creditor of only one spouse may not obtain a lien against the property, or the interest of the spouse in the property. Moreover, neither spouse alone can transfer an interest in the property. Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599, 602 (1951). Since Mrs. Bishop could not transfer any interest in the property and her creditors could not levy on it, her interest did not pass to the trustee in bankruptcy. 11 U.S.C. § 110(a)(5)(1970), Reid v. Richardson, 304 F.2d 351, 353 (4th Cir. 1962); 4A Collier, Bankruptcy § 70.17(8) (14th ed. 1971). Nevertheless, Mrs. Bishop's discharge from bankruptcy would prevent Roanoke from obtaining a judgment against both her and her husband, a prerequisite to levy against the house. Harris v. Manufacturers Nat'l Bank, 457 F.2d 631, 635 (6th Cir. 1972). Phillips v. Krakower, 46 F.2d 764, 765 (4th Cir. 1931). However, because discharge affects only a bankrupt's personal liability, if Roanoke could obtain and record a judgment against Mr. and Mrs. Bishop before Mrs. Bishop's discharge, the judgment lien would not be released by her subsequent discharge. 1A Collier, Bankruptcy § 17.29 (14th ed. 1972). For these reasons, Roanoke petitioned the referee to delay granting the discharge while it sought to obtain a judgment against Mr. and Mrs. Bishop in a state court so it could levy on the property held by the entireties.

The referee conducted an evidentiary hearing on Roanoke's petition for a stay. He found that Roanoke had failed to comply with the provisions of the Uniform Commercial Code, which Virginia has adopted, governing the sale of repossessed collateral. Concluding, therefore, that Roanoke was not entitled to collect the deficiency, the referee denied the stay, and the district court affirmed.

■■■ Roanoke asserts that the referee lacked jurisdiction to rule on the merits of its claim against Mrs. Bishop because it does not seek to collect the indebtedness from an asset of the bankruptcy estate. As a corollary, it asserts that the referee was obligated to stay Mrs. Bishop's discharge. Roanoke's contention, we believe, is based on a misconception of the function of a bankruptcy court when it considers a motion for a stay of discharge. Clearly, the court had jurisdiction to consider the petition to grant a stay. Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L. Ed. 1061 (1903). In deciding whether to grant or deny a stay, the court undertakes a judicial, not a ministerial, duty. The Bankruptcy Act vests referees with jurisdiction at law and in equity to allow or disallow claims and to discharge

or refuse to discharge bankrupts. 11 U.S.C. §§ 11(a), (a)(2), and (a)(12) (1970). The referee is required to discharge the bankrupt unless timely objection is filed, and when a creditor objects, the referee must afford both parties a full hearing. 11 U.S.C. § 32(b) (1970). Proceedings conducted under these and related sections of the Act ordinarily involve the ultimate discharge of the debtor. Obviously, they require the referee to exercise judicial discretion. No less discretion is required when the referee grants or denies a motion to stay a discharge for this decision may affect the orderly, efficient administration of the bankrupt's estate.

■■■ Once the bankruptcy court's jurisdiction was invoked to consider a motion for a stay, the court was not precluded from exercising judicial discretion because the controversy between Roanoke and Mrs. Bishop involved property that was not a part of the bankrupt's estate. We read Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), and Phillips v. Krakower, 46 F.2d 764 (4th Cir. 1931), the leading cases granting stays so creditors could levy on property that was not a part of the bankrupt's estate, as requiring the bankruptcy court, in its capacity as a court of equity, to exercise sound discretion in acting on a motion to stay. In each of those cases the bankruptcy court ascertained that the creditor's claim was valid and that it would be inequitable to deny the creditor a remedy. We do not depart from this precedent in ruling that the referee should consider the validity of a claim when he is asked to stay a discharge. Our narrow holding in this case is that a stay is not mandatory when it would serve only to allow a creditor to press a claim that is clearly invalid under state law.

■■ Roanoke next contends that the bankruptcy court erred in holding that the sale of the Bishop collateral did not comply with the law. We find no merit in this assignment of error.

The Uniform Commercial Code provides that a secured creditor may purchase repossessed collateral only at a public sale unless the collateral is of the type customarily sold in a recognized market, or is subject to standard price quotations.[1]

The evidence disclosed that Roanoke's notice of sale to the Bishops was returned unclaimed. Roanoke then moved the boat to a used car lot. It did not advertise the sale in any newspaper. It posted no signs announcing the event. Roanoke's collection manager testified he mentioned the sale to anyone he thought would be interested. The credit manager, who held the sale, testified that he neither advertised it nor invited anyone to attend. No one passing the lot could have known an auction was taking place. Other than Roanoke's representatives, only two people were present at the sale. The manager admitted that they were probably employees of the used car lot. One of them, possibly both, bid at the sale, but how high they bid is not shown. Roanoke purchased the collateral for $1,500 and subsequently resold it for $2,000, which it credited to Mrs. Bishop's account.

Gilmore, in his commentary on § 9–504(3) of the code, says:

"Presumably the essence of a 'public sale' is that the relevant public is not only invited to attend but is also informed, by whatever means of publicity may be appropriate, when and where the sale is to be held. If the sale has not been appropriately publicized, it would not be a public sale no matter where it was held or how it

---

1. Va.Code Ann. § 8.9–504(3) (1965), which enacts the Uniform Commercial Code, provides in part:

"The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

was conducted." 2 G. Gilmore, Security Interests in Personal Property 1242 (1965).

This observation accords with Restatement of Security § 48, comment c at 139–40 (1941), where, a public sale is defined as, "one to which the public is invited by advertisement to appear and bid at auction for the goods to be sold." We conclude, therefore, that the bankruptcy court's ruling that Roanoke did not conduct a public sale is supported by the evidence and the law.

The commercial code imposes liability on a secured creditor who disposes of collateral without complying with the law.[2] It is silent, however, about the creditor's right to recover a deficiency, and courts have not ruled uniformly on this issue. Several courts have held that complaince is a condition precedent to recovery. *See e. g.,* Skeels v. Universal C.I.T. Credit Corp., 222 F.Supp. 696 (W.D.Pa.1963), modified, on other grounds, 335 F.2d 846 (3d Cir. 1964); Braswell v. American Nat'l Bank, 117 Ga.App. 699, 161 S.E.2d 420 (1968); Leasco Data Process. Equip. Corp. v. Atlas Shirt Co., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (Civ. Ct. 1971). Other courts hold to the contrary.

In the absence of a definitive ruling by the Supreme Court of Virginia, we cannot say that the bankruptcy court erred in concluding that Roanoke was barred from recovering a deficiency judgment because it disposed of the collateral in a manner not permitted by the code. A leading commentator advocates this rule, 2 G. Gilmore, Security Interests in Personal Property 1264 (1964), and the result is consistent with the pre-code Virginia law. Va.Code Ann. § 8.9–501, Va. Comment (1965).[3]

But the outcome of this appeal need not rest on speculation about the rule Virginia ultimately will apply to recovery of deficiencies. Even under the alternative theory adopted by some courts, Roanoke cannot prevail. Courts that allow a secured creditor to recover a deficiency although he has not fully complied with the law hold that the debt is not to be credited merely with the proceeds of sale; instead, the debtor must be credited with the amount that reasonably should have been obtained through a lawful sale—that is, the credit must be equivalent to the market value. Logical-

---

2. Va.Code Ann. § 8.9–507 (1965) which enacts the Uniform Commercial Code, provides in part:

"(1) If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

"(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition."

3. Unless displaced by the Uniform Commercial Code, a state's prior commercial law supplements the code. Va.Code Ann. § 8.1–103 (1965). This provision supports the bankruptcy court's application of pre-code Virginia law. *Cf.* Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999, 1001, 104 Cal.Rptr. 315, 320 (1972).

ly, the amount of the proceeds is not evidence of the market value, and a creditor who has not complied with the law has the burden of proving by other evidence that the market value is less than the balance due. *See e. g.*, Universal C. I.T. Credit Co. v. Rone, 248 Ark. 665, 453 S.W.2d 37 (1970); Weaver v. O'Meara Motor Co., 452 P.2d 87 (Alaska 1969); Community Management Ass'n of Colorado Springs v. Tousley, 505 P.2d 1314 (Colo.App.1973).

■ Roanoke's credit manager admitted that the collateral did not bring its market value at the sale, but he ventured the opinion that it brought 75 percent of its value. His professional qualifications for making this estimate are not shown. Indeed, he conceded that he could not testify what the collateral actually was worth. Roanoke introduced no other evidence of the market value. Nor did resale of the collateral for an additional $500, and the crediting of this sum on Mrs. Bishop's account, prove that the disposition of the collateral was commercially reasonable or that the aggregrate credit of both sales represented the market value of the collateral. Roanoke did not introduce an appraisal of the property or even evidence of sales of comparable property. The resale does not appear to have been made through a broker or dealer, or in the usual manner in any recognized market. Circumstances of the resale, including advertising, were not disclosed. In short, the only proof of market value was the amount the collateral brought at sales that were neither lawful nor commercially reasonable. This proof is insufficient, as a matter of law, to secure a deficiency judgment.

Roanoke has not established its claim under either theory pertaining to recovery of deficiency judgments when a secured creditor does not follow the law in disposing of collateral. We conclude, therefore, that the bankruptcy court properly exercised its equitable jurisdiction by declining to stay the bankrupt's discharge. The judgment is affirmed.