Robert L. **HATFIELD**, Complainant,

v.

**MULLINS FORD, INC.,** et al., Defendants.

Civ. A. No. 73-C-122-A.

United States District Court, W. D. Virginia.

Feb. 13, 1975.

E. K. Street, Street, Street & Mc-Glothlin, Grundy, Va., Charles B. Flannagan, II, Woodward, Miles & Flannagan, Bristol, Va., for Robert L. Hatfield.

Jackson S. White, Jr., White, Elliott & Bundy, Abingdon, Va., for Mullins Ford and Frank Baldwin.

G. R. C. Stuart, Penn, Stuart & Eskridge, Abingdon, Va., for Hartford Fire Ins. Co.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff, Robert Hatfield, purchased a Ford truck from defendants Mullins Ford, Inc. and its sales manager, Frank Baldwin, on June 17, 1970. The price of the vehicle was $22,000. Plaintiff made a cash down payment of $3,000 with the balance financed pursuant to a conditional sales contract which was assigned to the third-party defendant, Ford Motor Credit Company (impleaded by Frank Baldwin and Mullins Ford, Inc.). As a part of this sales contract and security agreement, plaintiff purchased fire, theft and combined additional insurance coverage for $932 with this sum also financed. This insurance was purchased from Gibson and Turner Insurance Co., Inc. and underwritten by defendant, Hartford Insurance Company.

In March, 1971, plaintiff extensively damaged his truck in an accident. He thereafter notified defendants, Mullins Ford, Inc., Gibson and Turner, and Hartford Insurance Company, of his loss but did not receive insurance payments. On the basis of these allegations, plaintiff asks for $18,000 from the three defendants—this sum representing his estimation of the loss suffered from the damage to his truck and therefore allegedly owing to him pursuant to the insurance contract.

According to affidavits submitted by defendant, Frank Baldwin and Kenneth Roberts, the Manager of the Bristol Office of the Ford Motor Credit Company, plaintiff defaulted on the monthly installment payments on his truck after his accident, and pursuant to the security agreement his truck was repossessed by the Ford Motor Credit Company on July 20, 1971. Thereafter, on August 10, 1971, a public sale for the truck was held, at which time it was purchased by Mullins Ford, Inc. for the sum of $14,500. At the time of this sale, plaintiff owed $14,800 under the conditional sales contract, thus leaving him subject to a deficiency of $300; plaintiff thereafter agreed to pay Ford Motor Credit Company the sum of $300 as a deficiency and made periodic payments of $15 each for a total payment of $150. Defendant Baldwin states that the $14,500 paid by Mullins Ford, Inc. at the foreclosure sale represented the proceeds of the loss payment made by Hartford plus an additional sum for "salvage."

The Roanoke, Virginia Claims Manager of the Hartford Insurance Company states by affidavit that following the accident involving plaintiff's truck, Hartford determined that Mullins Ford, Inc. was the named insured and for this reason coverage was initially denied. However, because Ford Motor Credit Company had been inadvertently advised that there was coverage, Hartford eventually agreed to pay $10,000 to Ford Motor Credit Company.

Plaintiff has submitted his own affidavit in which he estimates that the val-

ue of his truck at the time of the accident was $18,000 and that after the damage its salvage value was estimated by Mullins Ford to be $5,500. He states that he received no money under his insurance contract; that he has no knowledge of money having been paid to satisfy his indebtedness to a third party; that no settlement of his insurance claim has been adjusted with his consent; that at the time of the sale of his truck, he believed that he was not in default; and that he was not given notice of the time and place at which the 1970 truck was sold.[1]

The issue now before the court is whether plaintiff's complaint should be dismissed for lack of subject matter jurisdiction in that the amount in controversy does not satisfy the requisite $10,000 jurisdictional amount of 28 U.S. C. § 1332. Defendants contend that even if plaintiff's truck were worth $18,000 prior to the accident, there is no dispute as to the fact that $14,500 was paid on plaintiff's indebtedness from the insurance proceeds and the salvage value of the truck, and therefore the maximum amount in controversy would be $3,500. Plaintiff, on the other hand, argues that there could be no deficiency if repossessed property is illegally sold; and that even if defendants have a valid claim for the insurance proceeds applied to his indebtedness under the purchase contract, this does not deny the fact that the amount in controversy in his complaint is in excess of $10,000.

Plaintiff cites the case of In Re Bishop, 482 F.2d 381 (4th Cir. 1973) for the proposition that a sale of repossessed goods which is not in conformity with the law operates to cancel the indebtedness secured by such goods. He thus appears to argue that his entire indebtedness may have been discharged leaving him free and clear to additionally claim the insurance proceeds. This court does not so read Bishop In dictum in that case the court noted that several courts had held that the failure of a creditor to comply with the statutory provisions for resale of repossessed property would operate to bar a deficiency judgment; however, such an interpretation of the law of Virginia was unnecessary for its decision. But even assuming that the law of Virginia would bar a deficiency judgment against a debtor in the case of an illegal sale, the court fails to perceive how this would support plaintiff's claim that his entire indebtedness was cancelled thus leaving the insurance proceeds in controversy.

In the first place, plaintiff did not even allege in his complaint that the foreclosure sale was illegal; but assuming that the complaint could be amended to so allege, the undisputed fact remains that Mullins Ford bought the truck at such sale for $14,500 leaving a deficiency of only $300. At most, the dictum in Bishop would support the argument that this deficiency should be cancelled, not the entire debt. In effect, plaintiff is arguing that he is entitled to a double recovery i. e. the cancelling of his entire indebtedness plus the insurance proceeds which have been applied to it. The court is aware of neither authority nor reason for such a result.

The applicable standards to be applied in ruling on a motion to dismiss for lack of jurisdictional amount are well established. If the jurisdictional amount is challenged by the defendant, plaintiff has the burden of proving his allegations as to the requisite amount in controversy by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satis-

---

1. The court notes that Kenneth B. Roberts, the Manager of the Bristol Office of Ford Motor Credit Company, states in his affidavit that notice of the public sale of the truck was sent by certified mail to the plaintiff. As evidence of this, he has submitted copies of the receipts one of which bears plaintiff's signature.

fied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." St. Paul Indemnity Co. v. Red Cab Co., 303 U.S. 283, at 289, 58 S.Ct. 586, at 590, 82 L.Ed. 845 (1938). "In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation." Thomson v. Gaskill, 315 U. S. 442 at 447, 62 S.Ct. 673 at 675, 86 L. Ed. 951 (1942).

 Application of the above principles to the facts of this case as appear from the record convinces the court that plaintiff has not carried his burden of demonstrating that the "pecuniary consequence" to himself or the defendants exceeds $10,000. It appears to the court that in order for plaintiff to satisfy the jurisdictional amount in controversy, he would have to show that he is entitled to the insurance proceeds despite the cancellation of his debt. This he has failed to do. On the present record, it is undisputed that Hartford paid $10,000 to Ford Motor Credit Company which was the assignee of the sales contract and loss payee for the insurance purchased.[2] This money was thereafter applied to plaintiff's indebtedness under the sales contract thereby reducing the amount owed to $300. The court in no way expresses or implies an opinion as to whether plaintiff has a valid cause of action against one or more of the defendants, but merely concludes that the amount in controversy is not, on the basis of the present record, in excess of $10,000.

It is accordingly the opinion of the court that the defendants' motion to dismiss for lack of jurisdiction be, and the same hereby is, granted.

2. The sales contract between plaintiff and Mullins Ford, Inc. states:

"The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the Assignment set forth on the reverse side hereof."

On the reverse side of the contract the following is stated:

"Buyer hereby assigns to seller any monies payable under such insurance by whomever obtained, including returned or unearned premiums and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the property or payment of the indebtedness hereunder in the sole discretion of Seller."