**In re Marvin R. PARRISH, Debtor.**

**Bankruptcy No. 7–88–01299.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Dec. 13, 1989.

for example, *H & K Developers v. Waterfall Village of Atlanta, Ltd. (In re Waterfall Village of*

J. Glenwood Strickler, Roanoke, Va., Trustee.

Neil E. McNally, Roanoke, Va., for debtor.

Michael A. Cleary, Roanoke, Va., for GMC Truck–Peterbilt.

MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The issue before this Court for determination is whether a secured creditor should be denied a deficiency claim in this Chapter 13 proceeding solely on the ground that the secured creditor failed to give the debtor the requisite notice under section 8.9–504, paragraph (3), of the Code of Virginia.

*Facts*

Prior to the filing of his petition for relief, Marvin R. Parrish (herein the Debtor) purchased from Dickerson GMC–Peterbilt (herein GMC) a 1985 Peterbilt dump truck. The secured indebtedness to GMC is evidenced by an installment contract and security agreement dated June 16, 1986, (herein the Contract). GMC assigned the Contract to PACCAR Financial Corporation (herein (PACCAR). Parrish defaulted under the terms of the Contract and PACCAR, through GMC, repossessed the collateral and proceeded to advertise it for sale to be held on December 27, 1988. The collateral was sold at the business premises of GMC for $34,000.00 and that sum was credited to Parrish's account leaving a deficiency balance of $22,901.88.

Since Parrish had filed a Chapter 11 proceeding on August 12, 1988, (later converted to a Chapter 13 proceeding on March 1,

*Atlanta, Ltd.)*, 103 B.R. 340 (Bankr.N.D.Ga. 1989).

1989) all of the action taken by PACCAR and/or GMC was taken pursuant to orders of this Court dated September 27, 1988, and December 7, 1988, modifying the automatic stay to permit foreclosure.

At trial the parties stipulated that the sale of the collateral had been advertised in a Roanoke newspaper three times prior to the scheduled sale date, that notice of the sale had been posted at the business premises of GMC, that the collateral had been inspected prior to the sale, that it had appraised presale at a value of $32,000.00, and that the wholesale value pursuant to a recognized truck blue book was $30,000.00.

The Debtor objected to the allowance of the deficiency claim filed by PACCAR on February 6, 1988, in the amount of $22,-901.88. The Debtor testified at the hearing on objection to the claim that the vehicle was not in proper working order when it was repossessed by PACCAR. Apparently, there were electrical problems with the truck and problems with the front and rear brakes rendering the truck inoperable. The Debtor identified and introduced into evidence as Exhibit A the Contract.

Paragraph 11(c) of the Contract deals with notice and states as follows:

Seller shall give Buyer at least ten (10) days written notice of any sale of the Collateral which Buyer agrees to be reasonable notice. Notice shall be given at the address specified in this contract or such other address as Buyer may specify in writing to Seller. Notice shall be effective when deposited in the mails, postage prepaid, or delivered to a telegraph company, addressed as provided above.

The Debtor testified that he did not receive any notice of the proposed sale of the collateral prior to its sale. No evidence was introduced at the trial to contradict or rebut the Debtor's testimony as to lack of notice. Upon cross-examination, the Debtor testified that he "would not give five cents" for the truck in its condition.

PACCAR introduced evidence at trial to show that a notice of sale had been prepared. However, no witness was able to testify that a copy of the notice had been delivered to the Debtor pursuant to the terms of the installment contract. A representative of GMC, Mr. Hall, did testify that the notice had been posted on the bulletin board at the business office of GMC where all repossession notices were normally posted. Mr. Hall, who is the business manager of GMC, testified that he had inspected the truck and that he had appraised the truck at $32,000.00 using not only the blue book value of the truck but also his knowledge of the value of trucks similar to the collateral in the Roanoke area and the market for such trucks. Further, he testified that he estimated a cost of $3,297.00 to recondition the truck. No reconditioning of the truck was undertaken by either PACCAR or GMC and it was sold "as is."

PACCAR also offered testimony of Ralph Burchett, a sales person employed by GMC for sixteen (16) years. Mr. Burchett testified that he actually conducted the sale of the vehicle and that he calculated the value of the vehicle on the sale date as $29,150.00. Mr. Burchett testified that he had discussed the sale of the vehicle with Mr. Hall and that they had agreed that a higher value was justified in view of the truck market in the Roanoke area. On the sale date, only one party appeared to express interest in the purchase of the truck. Mr. Burchett showed the interested individual the truck and solicited an offer for it. The offer which was received by Mr. Burchett was deemed to be unacceptable and was rejected. Subsequent to the designated auction date another offer was made by a Mr. Hazelwood for purchase of the truck for the sum of $34,-000.00. PACCAR accepted the offer and the truck was sold.

*Law*

The Debtor argues that PACCAR has failed to give him notice pursuant to Code of Virginia § 8.9–504(3) which states, in part, as follows:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. . . . Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on

a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

The Debtor also points to the provisions of paragraph 11(c) of the Contract which require ten (10) days' notice prior to sale. The purpose of the notice provision in 8.9–504(3) is to give the debtor and any other interested parties sufficient time to take such steps as they deem necessary to protect their interests by taking part in the sale or other disposition of the collateral if they so desire. From the evidence presented, the Debtor did not receive the notice required under the Code of Virginia or by the Contract.

Code of Virginia § 8.9–507(1) states, in part, as follows: "If the disposition has occurred, the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part." The Debtor in objecting to the allowance of the deficiency claim does not ask for recovery as provided in section 8.9–507(1). In addition, the Uniform Commercial Code section is silent concerning the creditor's right to recover a deficiency. However, the Fourth Circuit Court of Appeals has discussed the issue of a secured creditor's entitlement to recover a deficiency. *In re Bishop,* 482 F.2d 381 (4th Cir. 1973). In the *Bishop* case, the Court found that courts have not ruled uniformly on the issue of a creditor's right to recover a deficiency. The Court noted that some courts have held that compliance with the Uniform Commercial Code is a condition precedent to recovery. The *Bishop* court also found that there has been no definitive ruling by the Supreme Court of Virginia on the issue of the right to recover a deficiency by a secured creditor who has failed to comply with the Uniform Commercial Code. In view of lack of such a definitive ruling,

the Fourth Circuit could not find in *Bishop* that the lower court (the bankruptcy court) had erred in denying recovery of a deficiency to the secured creditor under a *per se* rule which holds that a secured creditor loses a claim to a deficiency if the UCC is not followed. *Id.,* at 385.

The *Bishop* court did state that an alternative to the *per se* rule has been adopted by some courts which would permit the secured creditor to recover a deficiency. This theory would require that the debt be credited with "the amount that reasonably should have been obtained through a lawful sale—that is, the credit must be equivalent to the market value." *Id.,* at page 385. The *Bishop* court analyzed the secured creditor's case in light of the alternative theory and found that the secured creditor in *Bishop* had not established its claim under the alternative theory.

*Bishop* sets forth both the *per se* rule for denying the deficiency and the alternative rule which would allow a deficiency if the secured creditor can establish the fair market value of the collateral. This theory can be labelled the "no harm no foul" rule. The Fourth Circuit in *Bishop* let the *per se* ruling of the bankruptcy court stand due to lack of precedent from the Supreme Court of Virginia. Yet, by stating the "no harm no foul" rule and applying it to the *Bishop* facts, the Fourth Circuit seems to imply that the rule might be used in a case when the facts make it appropriate.

This Court has found no case by the Supreme Court of Virginia decided after the *Bishop* case which gives a definitive ruling as to whether a *per se* or "no harm no foul" rule should apply in Virginia. Absent a definitive ruling, this Court believes that the facts of each case must be examined in order to determine which rule should be applied. In the case at bar, it appears that the only failure of the secured creditor was lack of notice to the debtor prior to the sale. This distinguishes this case from *Bishop* and from other cases following a *per se* rule.

There are also some mitigating circumstances in the case at bar. First, the Debt-

**232**

or did not offer at trial any evidence to show that he intended or was in a position to protect his interests at the sale had he been given notice. Second, the Debtor testified at trial that he believed the truck was worth $60,000.00, but, that he wouldn't give "five cents for it." Further, it is clear from the Debtor's testimony at trial that he had experienced difficulty with the truck throughout his ownership of it. Because of these facts, this Court finds that lack of notice in this case was less likely to result in a sale that was not commercially reasonable than the defects found in the *Bishop* sale. Thus, this Court finds that it would be unduly harsh to impose a *per se* rule on PACCAR and the "no harm no foul" rule will be followed in this case.

In looking at the "no harm no foul rule", it appears that the burden should shift to PACCAR to show that the credit applied to the debt is equal to the fair market value of the vehicle. The evidence shows that presale the appraised value of the collateral ranged from $29,150.00 to $32,000.00. All of these values were set by agents of GMC. The stipulated sales price obtained by PACCAR was $34,000.00 which is in excess of the appraised value put on the truck by GMC. Thus, this Court holds that the fair market value to be credited is the sales price of $34,000.00. As evidenced by amended proof of claim no. 13 filed by PACCAR, PACCAR applied the entire $34,000.00 as a credit against the amount owed.

The proof of claim shows a contract pay-off balance as of the date of public sale of $56,765.80. This Court holds that the amount of the claim to which PACCAR is entitled is the pay-off balance as of the date of the filing of the Debtor's petition for relief, August 12, 1988. This amount shall be credited by the sum of $34,000.00 and the resulting deficiency shall be allowed as an unsecured claim in this proceeding. Since a deficiency arises, no sale costs are allowable under section 506(b).

An order will be entered implementing this memorandum opinion.

### ORDER

Pursuant to the memorandum opinion attached hereto and made a part hereof it is

ORDERED:

That the claim of PACCAR Financial Corporation in this proceeding be, and it hereby is ALLOWED in an amount equal to the contract pay-off balance of the installment sales contract dated June 16, 1986, between the debtor and Dickerson GMC Truck–Peterbilt, Inc., as of the date of the filing of the debtor's petition for relief, August 12, 1988, less $34,000.00, representing the fair market value of the collateral received by PACCAR, as assignee of said contract as a result of its sale of the collateral.