**In re WAYNE FORD–CHRYSLER, INC., Debtor.**

**CHRYSLER CREDIT CORPORATION, Plaintiff,**

v.

**WAYNE FORD–CHRYSLER, INC., Defendant.**

**Bankruptcy No. 83–86.
Adv. No. 83–0108.**

United States Bankruptcy Court, D. Vermont.

March 9, 1984.

Charles E. Gibson, Jr., Montpelier, Vt., for Chrysler Credit Corp.

Edward R. Zuccaro, St. Johnsbury, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The debtor, Wayne Ford-Chrysler, Inc. (Wayne), a car dealership, filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 10, 1983. The instant matter comes before the court on the complaint of Chrysler Credit Corporation (Chrysler), Wayne's floor-plan financier, for a judgment in the amount of $37,373.06 plus costs, which figure represents the proceeds, in the amount of $25,628.14, of three cars Wayne sold out of trust, plus a deficiency in the amount of $11,744.92 with respect to Chrysler's repossession and sale of 15 floor-plan financed vehicles. Wayne has counterclaimed for "in excess of 10,-000.00." It also alleges that no deficiency is allowable and that it is entitled to damages in the amount of $7,740.00. The facts are as hereinafter recited.

## FACTS

Wayne sold $25,628.14 worth of Chrysler's collateral without paying Chrysler as required by the floor-plan financing arrangement.

On May 4, 1983, after making an unsuccessful demand for the $37,373.06 due, and fearing further loss of collateral, Chrysler requested Wayne to execute a document, drafted by Chrysler, which provided that

... the financial affairs of [Wayne] are such that it can no longer continue its present business operations ...

In consequence, [Wayne] ... delivers possession ... and surrenders the [Chrysler floor-planned cars] for the purpose of lease, sale or other disposition to be accomplished in a commercially reasonable manner and in accordance with the statutes in such case made and provided.

... [Wayne] has this day given to Chrysler ... exclusive possession of [Wayne's] premises ... for such reasonable time as may be necessary to foreclose, liquidate and sell and dispose of the foregoing collateral ... such occupancy ... is not expected to exceed six weeks ...

On May 4, 1983, when Wayne executed this document, Chrysler advised Wayne that Chrysler would the following day repossess and remove for sale the 15 cars subject to Chrysler's security interest. On May 4, 1983, Chrysler had no certain knowledge of the actual disposition of the collateral it would subsequently make.

Throughout the course of May 4th, 5th and 6th, 1983, Wayne was actively negotiating with third parties for venture capital to save his Chrysler franchise. Chrysler did not remove its collateral on May 5th; rather, Chrysler waited until May 6th to determine whether, during the interim, third party financing would materialize.

During the afternoon of Friday, May 6th, 1983, Chrysler informed Wayne that the vehicles would be removed that day before 6:00 P.M., by which time Chrysler would have already sold some of the cars, with the remainder expected to be sold either that evening or on Monday, May 9th.

Chrysler sold 10 cars before 6:00 P.M., May 6th, to another Chrysler dealership; the remaining 5 cars subject to Chrysler's security interest were removed along with the bought cars, and were sold to a Dodge dealership at noon on Monday, May 9th. All cars were sold in accordance with practice, usage and custom in the industry and at the prevailing market rate at the time the sales were consummated. The prices received were fair and reasonable.

Wayne made an average profit of $516.00 per Chrysler vehicle sold by Wayne in 1983, excluding the 15 cars repossessed by Chrysler on May 6th. As to those 15 cars, Wayne suffered an aggregate loss of $4,445.00.

## DISCUSSION

The issues in this case are: (1) whether Chrysler gave Wayne reasonable notification as to the disposition of Chrysler's collateral in compliance with Vermont Statutes, title 9A, section 9–504(3); and (2) whether Chrysler disposed of the collateral in a commercially reasonable manner, in compliance with Vermont Statutes, title 9A, section 9–504(3). If Chrysler's notification, to Wayne, as to the private sale of its collateral, was not "reasonable notification," Wayne may avoid a deficiency judgment. *Chittenden Trust Co. v. Maryanski*, 138 Vt. 240, 415 A.2d 206 (1980). If the method, manner, time, place and terms of the sale were not commercially reasonable, or if the notification given was not reasonable notification, Wayne as the contract debtor has a right to recover from Chrysler as the secured party any loss caused by the failure to proceed in accordance with section 9–504(3). 9A Vt.Stat. 9–507(1).

Section 9–504(3) provides, "... every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable ... reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." Although "reasonable noti-

fication" is not defined, at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take steps to protect their interests by taking part in the sale or other disposition if they so desire. Uniform Laws Comments.

■ The court holds that the notification Chrysler gave to Wayne was not reasonable notification as contemplated by the statute, with the result that no deficiency judgment is allowable in this case. Although there is no statutory period during which the collateral must be held before disposition, the statute does require that the secured party clearly set forth the time after which a private sale is to be made. *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 422 A.2d 940 (1980). The document drafted by Chrysler makes no reference to a time after which the collateral is to be disposed of, or even, for that matter, removed.

■ The burden is on Chrysler to prove compliance with section 9–504(3). *Chittenden Trust Co. v. Maryanski, supra.* Section 9–504(3) places a positive duty on the secured party to act; the burden is not on Wayne to surmise when a disposition of collateral might occur. *See, Union Trust of Elsworth v. Hardy*, 26 UCC Rep. serv. 817 (Sup.Ct.Me.1979). Since the section sets out relatively few specific requirements relating to the sale of collateral, it is not unreasonable to require strict compliance with those requirements that the drafters deemed sufficiently essential to specify. *Chittenden Trust Co. v. Maryanski, supra.* 138 Vt. at 247, 415 A.2d 206.

■ Wayne did not waive its right to reasonable notification; it surrendered the collateral on the express condition that every aspect of the disposition be accomplished "... in accordance with the statutes ..." Chrysler first informed Wayne that a private sale was contemplated, on May 6, after the sale of most of the repossessed cars had in fact already taken place. This post-sale notification did not afford Wayne sufficient time to take appropriate steps to protect its interests if it chose. That Wayne did not have ready cash on the day of sale is immaterial; with reasonable notification, Wayne would have been provided the opportunity to negotiate specific proposals with the third parties with whom Wayne was conducting discussions with a view toward saving his dealership.

■ It is not sufficient that on May 4th Chrysler told Wayne it would remove the cars from Wayne's premises on May 5th; or that Wayne may have guessed that a sale was imminent. Notice of sale made "... in a general way ...," see, Chrysler's answers to Wayne's Interrogatory No. 8, does not satisfy the statute. On the facts, Chrysler informed Wayne of the sale after the sale had taken place. As proving compliance with section 9–504(3) is a condition precedent to recovery of a deficiency judgment, *Chittenden Trust Co. v. Maryanski, supra*, 138 Vt. at 246, 415 A.2d 206, no deficiency judgment may be awarded in this case.

As to damages, Vermont Statutes, title 9A, section 9–507 provides:

(1) If it is established that the secured party [did] not [proceed] in accordance with [section 9–501 *et seq.*] the debtor ... has a right to recover from the secured party any loss caused by a failure to comply ...

(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonably manner. If the secured party either sells the collateral in the usual manner in any recognized market therefore, or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

On the facts, Chrysler sold its collateral for a price current in the relevant geographic market at the time of the sale and

the sale was conducted in a customary and common method which conformed with reasonable commercial practice among dealers in the subject type of property. This manner of disposition of collateral is commercially reasonable as is expressly set forth in section 9–507(2).

 Wayne nevertheless has a right to recover from Chrysler any loss caused by Chrysler's failure to give reasonable notification. 9A Vt.Stat. 9–507(1). However, Wayne proved no loss caused by such failure to comply. Wayne claims it "lost" the profit it would have received had it been permitted to retail the cars, and estimated the per vehicle "loss" at $516.00 based on the prior year average net profit realized per vehicle sold. As to the current year and the repossessed cars, "lost profits" are at best speculative, particularly in the absence of proof that Wayne had ready buyers for the cars, which Wayne does not allege. The "loss" of this expectancy cannot support a determination of loss under section 9–507(1).

 Wayne suffered no actual loss on Chrysler's sale of 10 of the 15 cars repossessed. On the remaining 5 cars, Wayne suffered an aggregate actual loss of $4,445 (being Wayne's actual cost, less the price obtained by Chrysler after repossession). Wayne, however, did not establish that this loss was caused by Chrysler's failure to give reasonable notification, as required by section 9–507(1). It seems more likely that Chrysler's failure to recover Wayne's cost as to these 5 cars arose from the condition of the cars themselves—all had been used as demonstrator models, all had been driven in excess of 500 miles, one had been damaged in an accident and subsequently repaired to factory specifications, one had been used for driver education instruction. The statute requires the debtor claiming a loss to prove that the loss was "caused by a failure to comply ..." At the hearings, Wayne did not meet this burden. The wording of the statute excludes automatic awards. Moreover, Chrysler did establish that the 5 cars were sold at a fair and reasonable price. Therefore, Wayne's counterclaim for damages must be denied.

## ORDER

Upon the foregoing,

IT IS ORDERED, that Wayne pay Chrysler the sum of $25,628.14 together with interest as provided in the promissory notes executed in connection with the floor-planning of the three cars sold out of trust, until the date that payment is made.