PREGERSON, Circuit Judge.
 

 Appellants, Robert and Karen Lucas, applied for payment from the California Real Estate Recovery Fund to satisfy a judgment they obtained against appellee Robert Thomas in their adversary complaint in Thomas’s bankruptcy proceeding. The district court approved the bankruptcy judge’s recommendation denying the application on the ground that the Lucases had not proved the facts required to recover under Cal.Bus. & Prof.Code § 10471 (West Supp. 1985). We reverse and remand.
 

 FACTS and PROCEDURE
 

 The Lucases invested in the Southern California Management Co., a sole proprietorship owned by Robert Thomas. They received some promotional material about the company. The material represented that investors would receive a rate of return on their investment of 28%, that the investments were secured by first deeds of trust on single family homes in desirable neighborhoods, and that the properties would never be encumbered by liens in excess of 40% of the properties’ value. The Lucases invested $32,000 in the company. In return they received two promissory notes for $18,000 each, secured by deeds of trust on two condominiums in Indio, California, which were part of a 52 unit condominium project that Thomas owned.
 

 The representations in the prospectus were false. There were, in fact, two previous liens on the property superior to the Lucases’ interests. Moreover, to make matters worse, Thomas made no payments on the promissory notes, the Lucases’ interests in the condominiums were extinguished by foreclosure, and Thomas filed
 
 *928
 
 for bankruptcy under Chapter 11 of the Bankruptcy Code.
 
 [1]
 
 The Lucases filed an adversary complaint in the bankruptcy proceeding and obtained a stipulated judgment for $36,480.00. The bankruptcy court ordered the judgment non-dischargeable. The Lucases then filed an application in the bankruptcy court for payment of their judgment from the Real Estate Recovery Fund (“the Fund”). The sole issue in that proceeding was whether the transactions by Thomas were ones for which a real estate broker’s license was required, thus entitling the Lucases to recovery from the Fund under Cal.Bus. & Prof.Code § 10471.
 

 The bankruptcy judge denied recovery to the Lucases on the ground that the transaction with Thomas did not involve a “sale” within the meaning of Cal.Bus. & Prof.Code § 10131.1 (West Supp.1985) and thus was not a transaction for which a broker’s license was required. The district court adopted the bankruptcy judge’s memorandum of decision in full and denied recovery.
 

 DISCUSSION
 

 I.
 
 Jurisdiction
 

 In light of the considerable uncertainty surrounding the jurisdiction of the bankruptcy courts and appeals from bankruptcy judges’ decisions following the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), we consider
 
 sua sponte
 
 our jurisdiction over this appeal.
 

 In
 
 Marathon
 
 the Supreme Court invalidated the trial court jurisdiction accorded the bankruptcy judges by the Bankruptcy Reform Act of 1978. The Court held, however, that the
 
 Marathon
 
 decision would not apply to judgments bankruptcy courts entered before October 4, 1982.
 
 Id.
 
 at 88, 102 S.Ct. at 2880. The Court later extended the stay to December 24, 1982. 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). The Lucases filed their original adversary proceeding against Thomas on June 9, 1982, and obtained judgment in the action on September 6, 1982. Thus, we judge the validity of the bankruptcy court’s judgment in the Lucases’ original adversary complaint under the standards of the Bankruptcy Reform Act of 1978. Under that Act, the bankruptcy court had jurisdiction over the action as one “arising out of or related to [a bankruptcy case].” 28 U.S.C. § 1471(b) and (c) (1982).
 

 The Lucases filed their application for recovery under the California Real Estate Recovery Fund in December 1982. But the bankruptcy judge did not enter judgment in the case until November 1983, nearly a year after the
 
 Marathon
 
 stay expired. Thus, the bankruptcy court’s jurisdiction was governed by the interim rule issued by the United States District Court for the Central District of California.
 
 [2]
 

 See
 
 General Order No. 242-A (subsequent references by section number only). Under General Order No. 242-A, the district court referred “[a]ll cases under Title 11 and all civil procedings arising under Title 11 or arising in or related to cases under Title 11” to the bankruptcy judges of the district. Section (c)(1). The bankruptcy judges retained jurisdiction to enter final orders and judgments in all matters except “related proceedings.”
 
 [3]
 
 Sections (d)(2) and (d)(3). In related proceedings, the bank
 
 *929
 
 ruptcy judges were not authorized to enter a judgment or dispositive order, but were required to submit findings, conclusions, and a proposed judgment to the district court. Section (d)(3)(B). After review, the district court could accept, reject, or modify the bankruptcy judge’s decision, and was not required to give any deference to the findings of the bankruptcy judge. Section (e)(2)(B).
 

 In this case the Lucases are appealing from the district court’s order adopting the bankruptcy judge’s recommendation denying them recovery from the Fund. The procedure followed in this case conformed to the requirements of General Order No. 242-A. Although no panel of this circuit has previously upheld the validity of the interim rules the district courts adopted following the
 
 Marathon
 
 decision,
 
 [4]
 
 we hold that the procedures adopted in General Order No. 242-A and followed in this case are constitutional. We agree with the six federal circuit courts that have considered this issue and found the emergency rules a valid exercise of the district court’s power.
 
 See Oklahoma Health Services Federal Credit Union v. Webb,
 
 726 F.2d 624 (10th Cir.1984);
 
 Salomon v. Kaiser (In re Kaiser),
 
 722 F.2d 1574 (2d Cir.1983);
 
 Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,
 
 709 F.2d 190 (3d Cir.),
 
 cert. denied,
 
 — U.S. -, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983);
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (6th Cir.1983);
 
 First National Bank of Tekamah v. Hansen (In re Hansen),
 
 702 F.2d 728 (8th Cir.) (per curiam),
 
 cert. denied,
 
 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983);
 
 Braniff Airways, Inc. v. Civil Aeronautics Board (In re Braniff Airways, Inc.),
 
 700 F.2d 214 (5th Cir.)
 
 cert. denied,
 
 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).
 

 We reach this conclusion for two reasons. First, the
 
 Marathon
 
 decision did not affect the jurisdiction of the district courts to adjudicate bankruptcy cases, but rather only invalidated 28 U.S.C. § 1471(c) which gave broad jurisdictional powers to the bankruptcy courts.
 
 Briney v. Burley (In re Burley),
 
 738 F.2d 981, 984 (9th Cir.1984);
 
 see also In re Kaiser,
 
 722 F.2d at 1578;
 
 Coastal Steel,
 
 709 F.2d at 200;
 
 White Motor,
 
 704 F.2d at 260;
 
 In re Hansen,
 
 702 F.2d at 729. Thus, under section 1471(a) and (b), the district court had jurisdiction to adjudicate bankruptcy cases during the transitional period.
 

 Second, the interim rule itself was a valid exercise of the district court’s power. General Order 242-A is fully consistent with the requirements of Article III and the holding of
 
 Marathon. Marathon
 
 only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court.
 
 See In re Kaiser,
 
 722 F.2d at 1580. The interim rule cures this defect because the district courts retain primary jurisdiction over all bankruptcy proceedings and the bankruptcy courts have only derivative jurisdiction; the district court retains authority to revoke the referral of any case to the bankruptcy court upon the district court’s own motion or upon the request of a party. General Order 242-A, section (c)(2). In a “related” proceeding, such as this one, the bankruptcy judge does not issue a binding judgment but submits findings of fact, conclusions of law, and a proposed ruling. Section (d)(3)(B). In reviewing the proposed ruling, the district court need give no deference to the findings of the bankruptcy judge, may receive such additional evidence as is appropriate, and may accept, reject, or modify the bankruptcy judge’s ruling. Section (e)(2)(B). Thus, we conclude that General Order No. 242-A is not an unconstitutional delegation of Article III judicial power to non-Article III judges.
 

 Because the district court had jurisdiction to enter judgment in the Lucases’ application for payment from the Fund, this appeal is properly before us as an appeal from a final judgment under 28 U.S.C.
 
 *930
 
 § 1291 (1982).
 
 See also Coastal Steel,
 
 709 F.2d at 199-200 (orders entered in related proceedings considered orders of district courts and appealable under §§ 1291, 1292 & 1651).
 

 Merits
 

 The sole issue before us is a question of California state law which we review de novo on appeal from the district court.
 
 Churchill v. F/V Fjord (In re McLinn),
 
 739 F.2d 1395, 1397 (9th Cir.1984) (en banc);
 
 United States v. McConney,
 
 728 F.2d 1195, 1201 (9th Cir.) (en banc),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The California legislature established the California Real Estate Recovery Fund to “protect the public against loss resulting from misrepresentation and breach of fiduciary duty by real estate brokers who are unable to respond to damage awards.”
 
 Antonio v. Hempel,
 
 71 Cal.App.3d 128, 130, 139 Cal.Rptr. 309, 311 (1977) (quoting
 
 Nordahl v. Franzalia,
 
 48 Cal.App.3d 657, 669, 121 Cal.Rptr. 794, 798 (1975)). Its purpose is remedial and it is to be given a liberal construction.
 
 Id.
 
 In order to recover under the Fund, the Lucases must meet the requirements set out in Cal.Bus. & Prof.Code § 10471(a), namely:
 

 When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud ... arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, ... the aggrieved person may ... file a verified application in the court in which the judgment was entered for an order directing payment out of the Recovery Account_
 

 There is no dispute that the Lucases have satisfied the majority of the requirements of the section. The transaction upon which the Lucases obtained their judgment was fraudulent and Thomas was a licensed real estate broker. The only remaining issue is whether the transaction between Thomas and the Lucases was one “for which a license is required.” In order to determine whether this requirement is met we look to separate sections of the Business & Professions Code to determine which transactions require a license.
 

 The Lucases first argue that Thomas was acting as a broker
 
 [5]
 
 under Bus. & Prof. Code § 10131.1 which provides that a person who is in the business of selling or exchanging promissory notes to the public is required to be licensed as a real estate broker.
 
 [6]
 
 Thomas admittedly participated in more than the eight transactions re
 
 *931
 
 quired to bring him within the purview of the statute. The parties disagree, however, about whether the transaction by which the Lucases obtained the promissory notes was a “sale or exchange” within the meaning of section 10131.1.
 

 Although the exchange of $32,000 for two promissory notes secured by deeds of trust would normally be characterized as a loan, the Lucases argue that the definition of “sale” contained in section 10131.1 takes it out of that category. We agree. Section 10131.1 defines sale broadly as “ever?/
 
 disposition
 
 of any interest in a real property sales contract or promissory note secured directly or collaterally by a lien on real property.” (Emphasis added.) In the absence of legislative history
 
 [7]
 
 , we construe the words of the statute according to their plain meaning.
 
 Merrifield v. Edmonds,
 
 146 Cal.App.3d 336, 344, 194 Cal.Rptr. 104, 109 (1983). A literal reading of the statute indicates that the mere issuance of the promissory notes by Thomas was a “sale” within the meaning of the statute.
 
 [8]
 
 By delivering $32,000 to Thomas and receiving the promissory notes in return, the Lucases acquired “an interest” in the promissory notes secured by liens on real property. The broad definition of sale in section 10131.1, taken with the liberal construction to be given to section 10471, allows the Lucases to recover from the Fund.
 

 Alternatively, the Lucases argue that the transaction was one for which a license is required under the provisions of the real estate securities sections of Cal.Bus. & Prof.Code §§ 10237-10238.7 (West 1964 & Supp.1985).
 
 [9]
 
 Under these provisions, a person must be licensed as a real estate broker in order to sell real property securities. Cal.Bus. & Prof.Code § 10237.3 (West 1964). Real property securities include “[a]n agreement made in connection with the arranging of a loan evidenced by a promissory note secured directly or collaterally by a lien on real property ... wherein the real property securities dealer ... expressly or impliedly agrees to ... [guarantee a specific yield or return on the note.” Cal.Bus. & Prof.Code § 10237.-1(a)(5) (West Supp.1985). The definition of a real property security contained in section 10237.1(a)(5) almost exactly corresponds to the Lucas/Thomas transaction. The Lucases agreed to lend money to Thomas and, in connection with that agreement, Thomas issued a promissory note on which he guaranteed a yield of 28%.
 

 Once again, the only significant disagreement is over whether there was a sale of real property securities for purposes of section 10237.1. The definition of “sale” contained in section 10237.2 parallels that in section 10131.1. Again, under the broad statutory definition of sale contained in both sections, the Lucases acquired “an interest” in a real property security. The transaction between the Lucases and Thomas fits precisely within the definition of real property security contained in section 10237.1(a)(5). Thomas was engaged in the business of selling real property securities. The sale of real property securities is an act for which a license is required under section 10237.3. Thus, the Lucases’ have established their right to recover under section 10471.
 

 
 *932
 
 The California legislature enacted section 10471 to protect members of the public from unscrupulous real estate brokers. The Lucases are members of the class of persons the statute was meant to protect, and have proved the facts requisite to recovery from the Fund. Accordingly, the decision of the district court is REVERSED and this case is REMANDED with instructions to enter judgment awarding the Lu-cases payment from the Real Estate Recovery Fund.
 

 [1]
 

 . That proceeding was later converted to a proceeding under Chapter 7 of the Bankruptcy Code.
 

 [2]
 

 . Because Congress had not yet enacted remedial legislation when the Supreme Court's stay expired on December 24, 1982, the Judicial Conference of the United States issued a model “Emergency Rule,” and recommended that all district courts adopt it when the stay in
 
 Marathon
 
 expired. The various district courts in the Ninth Circuit adopted, with minor variations, the emergency interim rule, temporarily resolving the unconstitutionality of the bankruptcy courts. Congress finally enacted legislation in response to the
 
 Marathon
 
 decision in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (1984).
 

 [3]
 

 . The Lucases' action for recovery from the Fund is properly characterized as a related proceeding because it is a civil proceeding that, "in the absence of a petition in bankruptcy, could have been brought in ... a state court.”
 
 See
 
 General Order 242-A, section (d)(3)(A).
 

 [4]
 

 .
 
 But see Briney v. Burley (In re Burley),
 
 738 F.2d 981, 984 n. 2 (9th Cir.1984) (noting existence of interim rule and citing
 
 White Motor Corp. v. Citibank,
 
 704 F.2d 254, 256-57, 261-64 (6th Cir.1983) which upholds the validity of a similar Emergency Rule).
 

 [5]
 

 . Under the traditional definition of "broker," a person must be acting as an agent for another party in a transaction and not on his own behalf before a license is required.
 
 See
 
 Cal.Bus. & Prof.Code § 10131 (West Supp.1985) and § 10133 (West 1964);
 
 see also Froid v. Fox,
 
 132 Cal.App.3d 832, 840, 183 Cal.Rptr. 461, 465 (1982);
 
 Robinson v. Murphy,
 
 96 Cal.App.3d 763, 767-68, 158 Cal.Rptr. 246, 249 (1979);
 
 McGaughey v. Fox,
 
 94 Cal.App.3d 645, 649-50, 156 Cal.Rptr. 593, 595-96 (1979). Here, Thomas was clearly acting as a principal in the transaction with the Lucases. The Lucases argue correctly, however, that even principals are required to be licensed under certain alternative code provisions discussed below.
 

 [6]
 

 . Bus. & Prof.Code § 10131.1 (West Supp.1985) provides:
 

 A real estate broker within the meaning of this part is also a person who engages as a principal in the business of buying from, selling to, or exchanging with the public, real property sales contracts or promissory notes secured directly or collaterally by liens on real property....
 

 As used in this section, "in the business” means any of the following:
 

 (a) The acquisition for resale to the public, and not as an investment, of eight or more real property sales contracts or promissory notes secured directly or collaterally by liens on real property during a calendar year.
 

 (b) The sale to or exchange with the public of eight or more real property sales contracts or promissory notes secured directly or collaterally by liens on real property during a calendar year. However, no transaction negotiated through a real estate licensee shall be considered in determining whether a person is a real estate broker within the meaning of this section.
 

 As used in this section, "sale”, ... include[s] every disposition of any interest in a real property sales contract or promissory note secured directly or collaterally by a lien on real property.
 

 [7]
 

 . The provision regarding “sale” was added to section 10131.1 in 1981, and to this date no California appellate court has addressed the legislature's intent in enacting the provision.
 

 [8]
 

 . This conclusion is strengthened by comparing the definition of "in the business” of selling promissory notes contained in section 10131.-1(a) with that contained in section 10131.1(b). While subsection (a) refers to the "resale" of pre-existing promissory notes to the public, subsection (b) refers to the "sale” of such notes. Thus, subsection (b) presumably contemplates the original issuance of promissory notes by the "seller".
 

 [9]
 

 .The Lucases apparently did not raise this argument before the bankruptcy court, and generally we will not consider arguments the appellant failed to raise below.
 
 Abex Corp. v. Ski's Enterprises, Inc.,
 
 748 F.2d 513, 516 (9th Cir.1984). This rule is discretionary, however, and where, as here, “the new issue is purely a legal one, the injection of which would not have caused the parties to develop new or different facts, we may resolve it on appeal.”
 
 Id.
 
 (quoting
 
 United States v. Dann,
 
 706 F.2d 919, 925 n. 5 (9th Cir.1983),
 
 rev’d on other
 
 grounds, - U.S. -, 105 S.Ct. 1058, 84 L.Ed.2d 28 (1985).