H. Lee ADDISON, III, Trustee for
TWI, Inc., Plaintiff,

and

United States of America,
Intervenor/Appellant,

v.

Margaret E. O'LEARY, and George
O'Leary, Defendants/Appellees.

Civ. A. No. 85–807–n.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 23, 1986.

Joseph R. Mayes, Wolcott, Rivers,
Wheary, Basnight & Kelly, Virginia Beach,
Va., for plaintiff.

J. Christopher Kohn, Tracy J. Whitaker,
Gregory A. Harrison, Civ. Div., U.S. Dept.
of Justice, Washington, D.C., for inter-
venor/appellant.

Carolyn L. Camardo, Smith and Tolerton,
P.C., Norfolk, Va., for defendants/appel-
lees.

## MEMORANDUM ORDER

JOHN A. MacKENZIE, Senior District
Judge.

This matter comes before the Court on
an interlocutory appeal from the United
States Bankruptcy Court. *In re TWI, Inc.*,
51 B.R. 470 (Bankr.E.D.Va.1985). The

Bankruptcy Court held that the Judicial Code's characterization of fraudulent and voluntary conveyance actions as core bankruptcy proceedings violates the constitutional principles of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See also* 28 U.S.C. § 157(b)(2)(H). For the reasons set forth below, the Court REVERSES and REMANDS this action for further proceedings.

## Background

TWI, Inc. (TWI) involuntarily entered bankruptcy on January 11, 1983. H. Lee Addison, III, the bankruptcy trustee, filed an adversary proceeding in the Bankruptcy Court against the O'Learys. The trustee asserted that the defendants, both former TWI officers and directors, improperly withdrew funds from the corporation in an attempt to defraud TWI's creditors. The trustee sought to recover these funds by challenging the withdrawal as a voidable preference, a fraudulent conveyance, and a voluntary conveyance.

In their answer, the defendants denied liability and challenged jurisdiction in light of *Northern Pipeline.* The Bankruptcy Court held *sua sponte* that the fraudulent and voluntary conveyance claims fell outside of its constitutional jurisdiction and that 28 U.S.C. § 157(b)(2)(H) violated Article III. The voidable preference claim, the Bankruptcy Court held, could be heard within its core jurisdiction. Pursuant to 28 U.S.C. § 2403(a), the United States intervened and successfully moved for an interlocutory appeal. *See* 28 U.S.C. § 158(a).

## Discussion

This appeal presents the question whether the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), constitutionally characterizes fraudulent and voluntary conveyance actions as core bankruptcy proceedings. Because this appeal implicates subject-matter jurisdiction, the Bankruptcy Court's conclusions will be reviewed *de novo. In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986).

In *Northern Pipeline*, the United States Supreme Court held that the Bankruptcy Reform Act of 1978 vested overly broad jurisdiction in the non-Article III bankruptcy courts. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Although the divided Court could not "agree on the precise scope and nature of Article III," *Northern Pipeline* establishes "only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without the consent of the litigants, and subject only to ordinary appellate review. *Thomas v. Union Carbide Agricultural Products*, 473 U.S. 568, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985).

The conceptual basis for this holding rests on the elusive distinctions between matters of private rights and public rights. Separation-of-powers principles require that Article III courts—absent consent of the parties—must exercise *de novo* review of purely private right disputes. Public right disputes, however, can be finally adjudicated by a bankruptcy court with Article III court involvement limited to appellate review. Although this distinction evades a "doctrinaire reliance on formal categories," a practical attention to substance suggest several general principles. *See Thomas*, 105 S.Ct. at 3336.

■ Typically, private rights involve claims that (1) rely predominately on traditional state common-law rules of decision, *and* (2) have a weak nexus to any statutory scheme enacted by Congress pursuant to a specialized grant of constitutional authority.[1] *Northern Pipeline* demonstrates that

---

1. The United States Court of Appeals for the Fourth Circuit applied this two-prong analysis in *In re 1616 Reminic Limited Partnership*, 704 F.2d 1313 (4th Cir.1983). The Court held that a bankruptcy court could not finally determine

"'a "traditional" state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law.'" 704 F.2d at 1318 (quoting *Northern Pipeline*, 458 U.S. at 92,

a common-law contract claim relies solely on traditional state rules of decision, and has a weak, even peripheral, nexus to Congress's constitutional authority to enact uniform bankruptcy laws. As a result, the Supreme Court invalidated former 28 U.S.C. § 1471 which allowed non-Article III bankruptcy courts to enter final judgment in these claims.

■ On the other hand, public rights generally involve two classes of actions.[2] The first type of public right depends entirely on a *sui generis* federal rule of decision without any reliance on state law. *Northern Pipeline,* 458 U.S. at 80, 102 S.Ct. at 2876. Examples include compensation rights governed by the Federal Pesticide Act[3] and other uniquely federal claims.[4]

The second type of public right relies, in essence, on a federal right of action that (1) incorporates by reference state law rules of decision, *and* (2) has a strong nexus to a statutory scheme enacted by Congress pursuant to a specialized grant of constitutional authority.[5] In this context, Congress subsumes state law into a broader nationally uniform statutory framework. Examples of this type include many claims tradi-

tionally considered to be core bankruptcy proceedings. For instance, a typical unsecured creditor's claim against the bankruptcy estate involves a straightforward application of common-law contract principles.[6] *See* 11 U.S.C. §§ 101(4), 102(2) (creditor claims); 11 U.S.C. § 502(b)(1) (disallows claims unenforceable under "applicable law"). In addition, the Bankruptcy Code allows the debtor to claim purely state law exemptions pursuant to the "opt-out" provision in 11 U.S.C. § 522(b). Although state law provides the rule of decision, these claims still qualify as public rights because of their strong nexus to legislation enacted pursuant to the specialized congressional power to establish "uniform Laws on the subject of Bankruptcies...." U.S. Const. art. I, § 8; *see Thomas,* 105 S.Ct. at 3336, 3342; *Northern Pipeline,* 458 U.S. at 71, 84 n. 36, 102 S.Ct. at 2871, 2878 n. 36. As a result, Congress can authorize initial adjudication by a non-Article III bankruptcy court (subject to appellate review by an Article III court) without offending separation of powers principles. *See Briden v. Foley,* 776 F.2d 379, 381 (1st Cir.1985); *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985).

102 S.Ct. at 2882 (Burger, C.J., dissenting)). The constitutional limitation identified in *Reminic* does not apply, therefore, when the bankruptcy court determines a matter closely related to an adjudication of bankruptcy under federal law. *Harman v. Levin,* 772 F.2d 1150, 1153 n. 3 (4th Cir.1985); *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985).

2. The Supreme Court in *Thomas* rejected the argument that public rights disputes existed only between individuals and a government-entity litigant. 105 S.Ct. at 3336.

3. 7 U.S.C. §§ 136 *et seq.; Thomas,* 105 S.Ct. at 3340.

4. In *Thomas,* the Court stated that prior decisions "treated as a matter of 'public right' an essentially adversary proceeding to invoke tariff protections against a competitor, as well as an administrative proceeding to determine the rights of landlord and tenants. *See Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 454–55, 97 S.Ct. 1261, 1268–69, 51 L.Ed.2d 464 (1977), citing as an example of 'public rights' the federal land-

lord/tenant law discussed in *Block v. Hirsh,* 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); *Ex parte Bakelite Corp.,* 279 U.S. 438, 447, 49 S.Ct. 411, 412, 73 L.Ed. 789 (1929) (tariff dispute). These proceedings surely determine liabilities of individuals." *Thomas,* 105 S.Ct. at 3337.

5. Two significant limitations preclude Congress from providing for initial determinations in non-Article III courts of all federal rights. First, federal statutory rights enacted pursuant to a non-specialized Article I power may require *de novo* Article III review. *See Northern Pipeline,* 458 U.S. at 80–81 n. 32, 102 S.Ct. at 2876 n. 32. Second, constitutional rights, by definition, exist notwithstanding relevant legislation and thus cannot be removed from judicial review under ordinary circumstances. *See Northern Pipeline,* 458 U.S. at 82 n. 34, 83, 102 S.Ct. at 2877 n. 34.

6. "Aside from objections to form and time of filing, any other disputes concerning a proof of claim raised by objection are not matters of bankruptcy law. State law or nonbankruptcy federal law usually governs." King, *Jurisdiction and Procedure Under The Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 690 (1985).

■ In the present case, the Court finds that the trustee's fraudulent and voluntary conveyance claims differ significantly from the contract claim in *Northern Pipeline.* Although both sets of claims involve state law, only the fraudulent and voluntary conveyance claims have a substantial relationship to the bankruptcy power of Article I § 8. Thus, Congress may constitutionally characterize these disputes as core proceedings and provide for final adjudication by the bankruptcy courts subject to the appellate review provisions of 28 U.S.C. § 158(a).[7] *See* 28 U.S.C. § 157(b)(1).

A *Northern Pipeline* contract claim has a weak nexus to the integral bankruptcy function of "restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power." *See Northern Pipeline,* 458 U.S. at 71, 102 S.Ct. at 2871. The debtor's claim—whether asserted by the debtor himself as in *Northern Pipeline* or by the trustee on the estate's behalf—lies against a third party outside of the bankruptcy context. Unlike a conveyance action which seeks to recoup an asset previously owned by the debtor and fraudulently secreted from the creditor's levy, the contract action seeks only to reduce speculative interests into a liquidated asset.

Essentially, the contract action merely attempts to increase estate assets (thereby mutually benefiting debtors and creditors) by bringing a third party into the bankruptcy court and and alleging a claim for damages. The contract action, therefore, adjusts the relationships between nonbankruptcy parties and bankruptcy parties. Hence, these actions have an attenuated nexus to integral bankruptcy functions and

must be characterized as private rights deserving of *de novo* Article III judicial review.

Unlike the contract action in *Northern Pipeline,* fraudulent and voluntary conveyance actions closely relate to the bankruptcy function of adjusting the rights and liabilities between the debtor and his creditors. In an ordinary conveyance action, the trustee succeeds to the rights of unsecured creditors and asserts that the debtor fraudulently transferred a previously owned asset in an attempt to thwart his creditors. *See In re Mortgageamerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983) (fraudulently conveyed assets remain property of the estate under 11 U.S.C. § 541).

Although the transferree is a party-defendant in the event the court imposes a constructive trust or enters a judgment for damages, the plaintiff asserts the principal allegations against the debtor. Essentially, the conveyance action adjusts debtor-creditor relations with the transferee participating only for the purposes of effecting a remedy. "In other words, federal law provides the *right* upon which the [equitable] remedy of the constructive trust sought ... is based." *In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983) (emphasis in original).

■ Several other points support this result. First, although state rules of decision govern much of the conveyance claim, the Bankruptcy Code incorporates these principles by reference.[8] *Cf. Carlton v. BAWW, Inc.,* 751 F.2d 781, 788 (5th Cir.1985) (conveyance actions come within federal question jurisdiction of 28 U.S.C. § 1334—diver-

---

7. Even if the Bankruptcy Court's *Northern Pipeline* analysis correctly determined that conveyance actions were not core proceedings, this Court would nevertheless be compelled to reverse. The Bankruptcy Court apparently dismissed these claims because of the "inescapable conclusion: a non-Article III judge may not adjudicate state law claims." *In re TWI, Inc.,* 51 B.R. at 470. In any event, however, the Bankruptcy Court must hear the non-core related claims and submit proposed findings of fact and conclusions of law for the district court's *de novo* review. 28 U.S.C. §§ 157(a), 157(c)(1); *see*

*also General Order of Reference,* July 27, 1984, *nunc pro tunc,* July 10, 1984 (E.D.Va.)

8. The defendant relies on the Supreme Court's statement in *Thomas* that the federal action did not constitute a private right because it did not "depend on or replace" state law. *See Thomas,* 105 S.Ct. at 3335. The defendant argues that actions that do "depend on or replace" state law necessarily constitute private rights. This negative inference, however, fails to consider the irrelevance of the nexus analysis when the action does not involve state law.

sity need not be alleged). On state law issues, bankruptcy courts follow state rules of decision only to the extent that they conform to prevailing bankruptcy policy. "Of course, where the [bankruptcy] law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts; but when the language of Congress indicates a policy requiring a broader construction of the statute than the state decision would give it, federal courts cannot be concluded by them." *Chicago Board of Trade v. Johnson,* 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). "Case law has further established that the bankruptcy courts, as courts of the United States, have power to supersede state law where it conflicts with the federal bankruptcy law which the court is primarily bound to enforce." *In re Madeline Marie Nursing Homes,* 694 F.2d 433, 436–37 n. 6 (6th Cir. 1982). Therefore, although state law governs substantive elements of the claim, its application always remains subject to countervailing federal bankruptcy policy.

Second, the jurisdictional provisions of the 1984 Bankruptcy Amendments closely parallel the Emergency Reference Rule promulgated in the wake of *Northern Pipeline. See* 1 King, Collier Bankruptcy Manual ¶ 3.01, at 3–23 (3rd ed. 1985). Every Court of Appeals to consider the question has held that the Emergency Rule satisfied the requirements of *Northern Pipeline. In re Thomas,* 765 F.2d 926 (9th Cir.1985); *In re Committee of Unsecured Creditors of FS Communications Corp.,* 760 F.2d 1194 (11th Cir.1985); *In re Stewart,* 741 F.2d 127 (7th Cir.1984); *In re Kaiser,* 722 F.2d at 1582; *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *In re Hansen,* 702 F.2d 728 (8th Cir.), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *In re Braniff Airways, Inc.,* 700

F.2d 214 (5th Cir.), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).

The United States Court of Appeals for the Second Circuit faced a similar constitutional challenge to the Emergency Rule's forerunner of 28 U.S.C. § 157(b)(2)(H). *In re Kaiser,* 722 F.2d at 1582. The Court upheld the provision by observing that fraudulent conveyance claims are inextricably tied to the creation of the bankruptcy estate and benefit all creditors equally. Accordingly, the Court found that the bankruptcy court could enter final judgment on conveyance claims within the context of the Emergency Rule.

Finally, Congress enacted the 1984 Bankruptcy Amendments to remedy the constitutional objections raised by *Northern Pipeline.* Section 157(b)(2)(H) specifically lists conveyance actions as core bankruptcy proceedings.[9] Congress's analysis of *Northern Pipeline* and its conclusion that these claims are core proceedings "lends considerable constitutional weight to finding them to be exactly that." *Matter of Baldwin-United Corp.,* 52 B.R. 541, 546 (Bankr.S.D.Ohio 1985); *In re Lion Capitol Group,* 46 B.R. 850, 859 (Bankr.S.D.N.Y. 1985).

### Conclusion

The Bankruptcy Court's holding that conveyance actions rely on state law and therefore cannot be core proceedings ignores Justice White's observation that the entire Bankruptcy Code "is constantly enmeshed in state-law issues." *Northern Pipeline,* 458 U.S. at 97, 102 S.Ct. at 2884 (White, J., dissenting). Indeed, Congress made the same point by stating "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

The dispositive issue is whether the claim has a strong enough nexus to the integral bankruptcy function of adjusting debtor-creditor relations to qualify as a public

---

**9.** A trustee has two routes within the Bankruptcy Code to assert conveyance claims. *See* 11 U.S.C. §§ 544(b), 548. Although the plaintiff's complaint does not identify the statutory route chosen, neither choice would materially affect the constitutional analysis.

right and thus constitutionally fall within the bankruptcy court's core jurisdiction. The Court holds that fraudulent and voluntary conveyance actions have a strong constitutional nexus and therefore can be properly characterized as core bankruptcy proceedings. *See In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 934 (Bank.E.D.N. C.1986). Accordingly, the Court REVERSES the Bankruptcy Court's holding that 28 U.S.C. § 152(b)(2)(H) violates Article III and REMANDS the action for further proceedings.

It is so ORDERED.