In re Richard K. and Nancy G.
PHELPS, Jr., Debtors.

Bankruptcy No. 95–20420–B.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 7, 1995.

656

Peter Chiusano, Willcox & Savage, Norfolk, VA, for Cenit Bank.

Dean W. Sword, Portsmouth, VA, for debtors.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This proceeding comes before the court on debtors' objection to Cenit Bank's unsecured proof of claim for a deficiency following the sale of collateral. The issue is whether Cenit's notice of a private sale of a repossessed collateral complied with section 8.9–504 of the Virginia Code. For the reasons stated in this opinion, the objection will be overruled and the claim allowed.

## FINDINGS OF FACT

In March 1984, Cenit loaned money to debtors for the purchase of a Bayliner vessel. The loan was secured by a purchase money security interest in the vessel. Debtors filed bankruptcy under Chapter 13 on January 27, 1995, after which debtors voluntarily surrendered the vessel to Cenit. In their Chapter 13 plan filed February 13, 1995, and confirmed April 12, 1995, debtors proposed to surrender the vessel, which was valued in the plan at $14,000.00, to satisfy Cenit's secured claim. The plan also provided that Cenit would receive an unsecured claim for any deficiency.

After receiving debtors' consent and pursuant to the security agreement, Cenit mailed to debtors a letter dated February 17, 1995. The letter advised debtors of the default under their security agreement, the amount necessary for them to cure the default and also stated that Cenit planned to sell the vessel in a private sale. The letter further stated (1) Cenit would allow debtors until February 27, 1995, to cure the default; (2) that Cenit would privately sell the vessel if debtors failed to cure the default by February 27, 1995, and (3) that debtors might be liable for any deficiency realized from the sale. Cenit's letter was properly addressed to debtors' home as reflected in their bankruptcy petition.

The debtors failed to cure the default, and Cenit obtained relief from the automatic stay on March 6, 1995. It sold the vessel to a third party in a private sale for $3,800.00. Subsequently, Cenit filed an unsecured claim for $12,370.47, which represents the deficiency between the amount owed of $16,170.47 and the amount realized from the sale. The debtors responded by filing an objection to Cenit's claim.

## DISCUSSION AND CONCLUSIONS

■ Debtors object to Cenit's unsecured proof of claim for a deficiency following the creditor's sale of collateral, which was voluntarily relinquished by debtors. The principal issue is whether Cenit gave debtors "reasonable notification" of a private sale of the collateral as required by Virginia law.

■ The disallowance of a claim is controlled by 11 U.S.C. § 502(b). The applicable portion permits the court to disallow a claim if:

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or *applicable law* for a reason other than because such claim is contingent or unmatured....

11 U.S.C. § 502(b) (emphasis added).

To the extent that applicable law, including state law, would afford the debtor a defense to a claim of a creditor absent bankruptcy, that defense is available in an objection to the claim. *Addison v. O'Leary*, 68 B.R. 487, 489 (E.D.Va.1986); *see also Collier On Bankruptcy*, p. 502–24, ¶ 502.02 (15th Ed., 1995); *In re Valentine*, 146 B.R. 945, 948 (Bankr. E.D.Va.1991). Therefore, should this court find Cenit's notice of the sale unreasonable, the unsecured claim for the deficiency realized from the sale of the collateral must be disallowed.

■ Under Virginia law, a secured party may seize and sell the collateral upon default of the underlying security agreement. *Va.Code Ann.* §§ *8.9–503 and 8.9–504 (Michie 1991)*. In selling the collateral, section 8.9–504(3) requires (1) that the sale must be conducted in a commercially reasonable manner and (2) that the debtor receive reasonable notice of the sale unless the debtor signed a waiver after default. *Va.Code Ann.* § *8.9–504*. The pertinent portion of the Virginia Code states:

Disposition of the collateral may be by public or private proceedings and may be

made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale* or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after a default a statement renouncing or modifying his right to notification of sale. . . .

. . . . .

Va.Code Ann. § 8.9–504(3) (emphasis added). The purpose of this notice provision is to give the debtor and any other interested parties sufficient time to take appropriate steps to protect their interests by taking part in the sale if they so desire. *In re Parrish,* 110 B.R. 229, 230 (Bankr.W.D.Va.1989). Failure to provide any notice of the sale makes the sale commercially unreasonable. *Woodward v. Resource Bank,* 436 S.E.2d 613, 616 (Va. 1993).

■ The policy reasons behind the requirement of notice in a public sale is slightly different from the policy reasons for a private sale. One court has noted that the purpose for the notice requirement in a public sale is threefold: (1) it gives the debtor the opportunity to exercise his redemption rights; (2) it affords the debtor an opportunity to seek out buyers for the collateral; and (3) it allows the debtor to oversee every aspect of the disposition, thus maximizing the probability that a fair sale price will be obtained. *Wilmington Trust Co. v. Conner,* 415 A.2d 773, 776 (Del.1980). Specific notice of when and where the public sale is to be held is required to accomplish these purposes.

■ In a private sale, however, the debtor is not entitled to participate. Thus, under section 8.9–504(3) the secured party need only provide the debtor with notice of the date after which the private sale is to be made. *Robinson v. Ford Motor Credit Company,* 706 F.Supp. 606, 608 (N.D.Ill.1989).

The "reasonable notification" required by section 8.9–504(3) is not defined in the statute, and the court must look to case law of Virginia and elsewhere for enlightenment.

■ Notice sent to an incorrect address is insufficient *Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W.2d 428, 434 (Minn.1983); *see also* Richard C. Tinney, *Sufficiency of Secured Party's Notification of Sale or Other Intended Disposition of Collateral Under UCC § 9–504(3),* 11 A.L.R.4th 241, 270–273. Mere delay in effecting the private sale after giving notice does not violate the notice requirements, provided that the test of commercial reasonableness can be met. *Associates Fin. Servs. v. DiMarco,* 383 A.2d 296, 300 (Del.Super.Ct.1978). Notice must be sent within a commercially reasonable time before the date of the private sale to enable those entitled to notice to take appropriate steps to protect their collateral. *Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W.2d at 433; *see also Citizens State Bank v. Sparks,* 202 Neb. 661, 276 N.W.2d 661, 663–64 (1979), (holding that notice must be sent at least 3 business days before the private sale to have reasonable notification). Failure to hold the type of sale contained in the notice was not "reasonable notification" under 9–504(3) as a matter of law. *Ayers v. Mellon Bank,* 1987 WL 8274, at *2 (Del.Super.Ct.1987). The naming of a specific date for the private sale is not required; specification of a time period after which a private sale may be held is sufficient. *Allard v. Ford Motor Credit Co.,* 139 Vt. 162, 422 A.2d 940, 943 (1980). The notice provision requires the secured party to clearly set forth the time after which a private sale is to be made. *Chrysler Credit Corp. v. Wayne Ford–Chrysler, Inc. (In re Wayne Ford–Chrysler, Inc.),* 38 B.R. 174, 176 (Bankr.D.Vt. 1984).

Debtors argue that Cenit's claim should be disallowed because the bank failed to provide reasonable notice of the sale of the collateral pursuant to section 8.9–504(3) of the Virginia Code. Although they asserted in the Chap-

ter 13 plan that the vessel was worth $14,-000.00, debtors have not attacked the vessel's selling price of $3,800.00 as commercially unreasonable. Instead, they assert that (1) they did not receive actual notice of the sale and (2) even if they had received Cenit's February 17, 1995 letter, it failed to reasonably notify them of the private sale. Although they do not complain about the validity or precision of the letter, debtors point to the absence of the time, place, or terms of the sale.

NOTICE OF SALE

 On the question of whether debtors received Cenit's letter, the bank produced a signed certified mail receipt for the letter, and it was properly addressed. However, Richard Phelps testified that the signature was not his and that he did not know whose signature was on the receipt. He could not remember whether he received the letter but admitted that he may have.

The Virginia Code provides that a person receives notice when it is delivered at any place held out as the place for receipt of such communications. *Va.Code Ann.* § *8.1–201(26)(b) (Michie 1991).* Cenit delivered the notice to the proper address furnished by debtors. The signed certified mail receipt of the letter certainly suggests that the letter was received at debtors' address. In addition, numerous courts have recognized that compliance with the notice requirement may be shown by proof of proper sending of the notice and that a secured party need not prove that a notice properly sent was actually received by the debtor. *See* Tinney, *supra* p. 4, at 280–285. I find that Cenit properly sent the notice, as evidenced by the mailing of the notice to the proper address and by the certified mail receipt and that it was received by debtors.[1]

The Court finds that the notice was sent by Cenit and received by debtors.

ADEQUACY OF NOTICE

 I disagree with debtors' interpretation of section 8.9–504(3). For a private sale, the statute merely requires Cenit to reasonably notify debtors of the time after which the sale is to be made. Although the method, manner, time, place, and terms of the sale must have been commercially reasonable, Cenit was not required to give debtors specific notice of the method, manner, time, place, or terms of the private sale.

 Turning to the notice provided in the Cenit's letter of February 17, 1995, the court finds that the notice was reasonable under the facts of this case. It was mailed to the correct address and gave debtors ten days to take appropriate steps to protect their collateral. It also advised that the vessel would be sold in a private sale if debtors did not cure the default by February 27, 1995, and that debtors would be liable for any deficiency. Furthermore, the sale was conducted within a commercially reasonable time of approximately four weeks after the date of the notice. Although it is not crystal clear that February 27, 1995, was the date after which the collateral would be sold, we can conclude that the letter, as a whole, reasonably notified the debtor that the vessel would be sold in a private sale after that date.

A separate order will be entered allowing Cenit's unsecured deficiency claim in the amount of $12,370.47.

---

1. There is also a presumption that the posting of a letter to the correct address with the proper postage is evidence of delivery. *See Bush v. Nationsbank, N.A. (In re Bush)*, 166 B.R. 69, 72 (Bankr.W.D.Va.1994). The only evidence of no delivery was Richard Phelps' testimony that he did not sign the mail receipt and that he could not remember whether he received the letter. Based on this evidence, debtors have not successfully rebutted the presumption of delivery.