## Richmond

## MICHAEL L. RHOTEN, A/K/A, ETC.

### v.

## UNITED VIRGINIA BANK

August 28, 1980.

Record No. 781425.

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ.

*Robert K. Caudle, Jr.,* for appellant.

*Stephen T. Gannon (R. Kenneth Wheeler; Virginia H. Hackney; Hunton & Williams,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

Under Code § 8.9-507(1), a part of the Uniform Commercial Code (hereinafter, the UCC), a debtor is granted the right to recover from a secured party any loss caused by a failure to give the debtor notice of the disposition of collateral that is the subject of a security interest. If the collateral consists of consumer goods, the debtor has the right to recover an amount "not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price."

Invoking this right of recovery, Michael L. Rhoten filed in the court below a motion for judgment against United Virginia Bank seeking damages for an allegedly wrongful disposition of a mobile home following its repossession by the Bank. Asserting that the motion for judgment failed to state a cause of action, the Bank demurred. The trial court sustained the demurrer and dismissed Rhoten's action.

From the allegations of the motion for judgment and the exhibits attached, it appears that on January 15, 1973, Rhoten purchased a mobile home from a dealer. Rhoten executed an installment sale security agreement in which he granted the dealer a security interest in the mobile home for the unpaid balance of $12,532.80, including a "FINANCE CHARGE-Time Price Differential" of $5,265.80. The dealer assigned the contract to the Bank without recourse.

By agreement dated December 8, 1975, with the conjoint consent of the Bank, Rhoten transferred his interest in the mobile home to Preston M. Rickman and Helen J. Rickman. In the contract, Rhoten and the Rickmans jointly and severally promised to pay the Bank the balance then due of $8,877.40.

The Rickmans defaulted in their payments to the Bank. On September 29, 1976, the Bank repossessed the mobile home. Some time thereafter, the bank "disposed of" the mobile home by "transferring" it to AMI Credit Insurance Company in accordance with a prior agreement whereby the company insured the Bank against loss due to a default in the terms of the original installment sale security agreement. The Bank did not give Rhoten notice of the "proposed disposition" to AMI.

By letter dated June 13, 1977, the Bank demanded from Rhoten payment of the sum of $1,362.07, representing a "deficiency balance" due from Rhoten because he had "endorsed on the . . . loan in the name of Preston and Helen Rickman." In addition, the Bank caused to be placed on Rhoten's record with a credit bureau a "derogatory comment" indicating he was a poor credit risk.

In other portions of the motion for judgment, Rhoten alleged that the Bank's "disposition" of the mobile home to AMI without notice to Rhoten violated applicable provisions of the UCC; that the mobile home constituted "consumer goods" within the meaning of the UCC; and, consequently, that Rhoten was entitled to recover "an amount not less" than the items specified in § 8.9-507(1).

Preliminarily, we are confronted with a rule violation. Citing Rule 5:36 and relying upon our decisions in *Vaughan* v. *Johnson and Miller,* 215 Va. 323, 210 S.E.2d 139 (1974), and *Thrasher* v. *Burlage,* 219 Va. 1007, 254 S.E.2d 64 (1979), the Bank has moved to dismiss this appeal for Rhoten's failure timely to file a designation of the parts of the record to be included in the appendix. Asserting that he had an understanding with opposing counsel concerning the appendix, counsel for Rhoten opposes the motion. Counsel for the Bank deny there was any understanding with respect to the appendix.[1]

We need not resolve this dispute; we will assume there was no understanding between the parties. We deny the motion to dismiss because Rhoten included in the appendix everything germane to a disposition of this appeal and the Bank concedes, as, indeed, it must, that it has not been prejudiced by Rhoten's failure timely to file a designation. For these reasons, *Vaughan* and *Thrasher* are inapposite. The controlling decision is *Leonard* v. *Arnold,* 218 Va. 210, 211, 237 S.E.2d 97, 98 (1977). There, the designation was filed late, but the appealing party included in the appendix the entire proceeding conducted below. For this reason, and because the opposing party had not been prejudiced, we said that the failure to file the designation in time was "not jurisdictional."

This brings us to the substantive aspect of the case. We must determine first whether Rhoten is a "debtor" within the meaning of the UCC. If we conclude Rhoten is not a debtor, the inquiry is at an end. If we find Rhoten qualifies as a debtor, then we must consider whether, under pertinent UCC provisions, the Bank's delivery of the mobile home to AMI was a "sale or other disposition" requiring notice to Rhoten or a "transfer" valid without notice. These are novel issues for this court.

With respect to the first issue, two UCC sections, 8.9-105(1)

---

[1] Effective April 1, 1980, after this appeal was awarded and the Bank had moved to dismiss, we amended Rule 5:36. The amendment provides that any agreement concerning the contents of the appendix must be in writing, signed by counsel for all parties, and filed in the office of the clerk of this court not more than ten days after the date of certification under Rule 5:30 that an appeal has been awarded.

(d) and -504(3), are pertinent. Section 8.9-105(1)(d) defines a "debtor" as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral." The section states further that, where "the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of [UCC Title 9] dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires."

Section 8.9-504(3) provides that the disposition of collateral "may be by public or private proceedings . . . at any time and place . . . commercially reasonable." With certain exceptions not applicable here, "reasonable notification of the time and place of any public sale or . . . of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ."

Rhoten observes that, after he transferred to the Rickmans his equity in the mobile home, he occupied the status of "a co-maker or guarantor" and remained "liable for the total amount due [the Bank], pursuant to the original contract and transfer of equity agreement." Accordingly, Rhoten argues, he had "a very real and direct interest" in maximizing the proceeds derived from the disposition of the collateral following its repossession so that any deficiency "would be minimal or none at all." Consequently, Rhoten maintains, he qualified as a debtor within the meaning of §§ 8.9-105(1)(d) and -504(3).

The Bank does not dispute Rhoten's characterization of his status as a comaker or guarantor. The Bank insists, however, that, when §§ 8.9-105(1)(d) and -504(3) are read in *pari materia,* Rhoten is disqualified as a debtor. Section 8.9-504(3), the Bank opines, deals with collateral and not the underlying obligation. Therefore, the Bank maintains, the word "debtor" in § 8.9-504(3), as limited by § 8.9-105(1)(d), means the "owner of the collateral." And, the Bank concludes, because Rhoten was not the owner of the collateral after he transferred it to the Rickmans, he was not a debtor within the contemplation of § 8.9-504(3).

The question whether one in Rhoten's status qualifies as a debtor within the meaning of applicable UCC provisions has been before the courts of other jurisdictions with some frequency. Rhoten cites a number of foreign cases in support of his position: *Barnett* v. *Barnett Bank of Jacksonville, N.A.,* 345 So.2d 804 (Fla. Dist. Ct. App. 1977); *Washington* v. *First National Bank of Miami,* 332 So.2d 644 (Fla. Dist. Ct. App. 1976); *Hepworth* v. *Orlando Bank & Trust*

*Company,* 323 So.2d 41 (Fla. Dist. Ct. App. 1975); *Turk* v. *St. Petersburg Bank & Trust Company,* 281 So.2d 534 (Fla. Dist. Ct. App. 1973); *Commercial Discount Corp.* v. *Bayer,* 57 Ill. App. 3d 295, 372 N.E.2d 926 (1978); *Bank of Gering* v. *Glover,* 192 Neb. 575, 223 N.W.2d 56 (1974); *T & W Ice Cream, Inc.* v. *Carriage Barn, Inc.,* 107 N.J. Super. 328, 258 A.2d 162 (1969); *Chase Manhattan* v. *Natarelli,* 93 Misc.2d 78, 401 N.Y.S.2d 404 (1977).

The Bank cites several out-of-state cases to sustain its view that Rhoten is not a debtor: *First Nat. Park Bank* v. *Johnson,* 553 F.2d 599 (9th Cir. 1977); *Security Pacific Nat. Bank* v. *Goodman,* 24 Cal. App. 3d 131, 100 Cal. Rptr. 763 (1972); *New Haven Water Co. Employees Credit Union* v. *Burroughs,* 6 Conn. Cir. Ct. 709, 313 A.2d 82 (1973); *Brinson* v. *Commercial Bank,* 138 Ga. App. 177, 225 S.E.2d 701 (1976); *A. J. Armstrong, Inc.* v. *Janburt Embroidery Corp.,* 97 N.J.Super. 246, 234 A.2d 737 (1967).

The Bank says the cases cited by Rhoten are distinguishable because they "deal with [the question] whether a failure to give notice precludes the award of a deficiency judgment in favor of the secured party." Interestingly, four of the five cases cited by the Bank deal with that same question. In any event, while the deficiency cases may not be directly in point, they are analogous and, therefore, helpful. The Bank says further that the cases it cites are "better reasoned." Surprisingly, each of the cases cited by the Bank deals in summary fashion with the question whether an obligor is a "debtor" in the particular situation involved. Although criticism may be voiced concerning the rationale of some of the cases cited by Rhoten, at least one decision, *Chase Manhattan* v. *Natarelli, supra,* is both well-reasoned and persuasive.

In *Natarelli,* the New York court noted that a number of legal commentators and a majority of jurisdictions share the view that a guarantor is a debtor within the meaning of the UCC provisions in issue here. The court stated further that the language of the New York definitional statute, a counterpart of our § 8.9-105(1)(d), sustains the same view. Finally, the court opined that the purposes underlying the provisions relative to notice lend support to the view. In this latter connection, the court stated:

> "Notice will provide the debtor an opportunity to bid at the sale, safeguard his right of redemption and permit him to reduce his potential liability by utilizing all practicable means of doing so. . . .
>
> "Because a guarantor should similarly be permitted to pro-

tect his rights, it is imperative for him to receive notice of the dispositional sale."
93 Misc.2d at 90, 401 N.Y.S.2d at 412.

Rhoten embraces as applicable to his case the same considerations that led the *Natarelli* court to the conclusion that a guarantor is a debtor within the meaning of applicable UCC provisions. Rhoten then suggests that these considerations, together with the "context so requires" language of § 8.9-105(1)(d), should prompt this court to hold that § 8.9-504(3) deals with both the collateral and the obligation and includes within its protection a co-obligor occupying Rhoten's status.

We follow Rhoten's suggestion readily. Interpreted literally and viewed in isolation, § 8.9-504(3) might be held to deal with collateral alone. But the subsection cannot be interpreted or viewed so narrowly; it must be construed in context with other pertinent provisions of the UCC.

The next preceding subsection, 8.9-504(2), makes a debtor "liable for any deficiency." A comaker or guarantor may be held liable for a deficiency. The amount of a deficiency is determined by deducting the proceeds of sale or other disposition of collateral from the balance due on the obligation. Hence, a comaker or guarantor has a vital interest in maximizing the proceeds of sale or other disposition and in reducing his potential liability for a deficiency.

A comaker or guarantor, however, cannot protect his interests without notice of an impending sale or other disposition of collateral. We believe, therefore, that the context in which the term "debtor" is employed in § 8.9-504(3) requires that the term be interpreted to include both the owner of the collateral and the obligor, if they are not the same person. Accordingly, we hold that Rhoten is a debtor within the meaning of §§ 8.9-105(1)(d) and -504(3).

■ This holding necessitates consideration of the second issue, *viz.*, whether the delivery by the Bank of the mobile home to AMI was a "sale or other disposition" or a "transfer." If the transaction was a "sale or other disposition" under § 8.9-504(3), previously quoted, then notice to Rhoten was required. If the transaction was a "transfer" under § 8.9-504(5), then the requirement of notice was obviated. Section 8.9-504(5) reads:

"A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives

a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under [UCC Title 9]."

The Bank states that, in his motion for judgment, Rhoten characterized the Bank-AMI transaction as a "transfer." The Bank argues that Rhoten "should be bound by this characterization." Our examination of the motion for judgment, however, fails to disclose this use of the word "transfer." We do find an allegation that the Bank "disposed of" the mobile home by "transferring" it to AMI, but this allegation hardly can be called an admission that the transaction was a "transfer" within the meaning of § 8.9-504(5); at worst, the allegation is equivocal. Furthermore, we find the word "disposition" employed four times in the motion for judgment; one instance occurs in a direct and unequivocal allegation that the Bank failed to give Rhoten notice of "the proposed disposition of the subject [mobile home] as required by Section 8.9-504." We reject this argument of the Bank.

The Bank argues next that, under §§ 8.9-504(1)[2] and -504(3), notice to a debtor is required only if action involving collateral is a sale, lease, or other disposition. Under the doctrine of *ejusdem generis*, the Bank states, a disposition must be "like a sale or lease" to qualify under the notice provisions of the UCC. The Bank points out that Rhoten has admitted the delivery of the mobile home to AMI was not a sale and that he has not contended the transaction was a lease. Therefore, the Bank maintains, it follows that the action with respect to the mobile home was not a disposition.

Further, the Bank chides Rhoten for his characterization of the AMI contract as a mere insurance policy. But, the Bank maintains, even if the contract was an insurance policy, the delivery of the mobile home to AMI nonetheless was a transfer within the meaning of § 8.9-504(5) because a policy insuring against loss caused by a borrower's default is "like" a guaranty, endorsement, or repurchase agreement.

The Bank says the case law overwhelmingly supports its position that its actions regarding the collateral in this case amounted to a transfer under § 8.9-504(5). The Bank cites five decisions from other

[2] Section 8.9-504(1) provides that a "secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . . ."

jurisdictions. Of these, however, four[3] involved true guaranty or repurchase agreements. In the fifth case, *Reeves* v. *Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976), the question was whether a reassignment of a retail installment contract from a finance company to an automobile dealer was a transfer or a sale or other disposition under the terms of Title 9 of the UCC. In turn, a determination of this question depended upon whether the finance company and the dealer had a guaranty or repurchase agreement.

In the course of its opinion, the Nebraska court made the following statement, which the Bank has quoted in its brief:

> "Where a seller assigns an installment contract to a finance company subject to a repurchase agreement or guaranty, it is the seller who has the rights and duties of a secured party when the finance company repossesses collateral and transfers it to the seller pursuant to the repurchase agreement or guaranty. Such a transfer is not a sale or disposition of collateral."

197 Neb. at 115, 247 N.W.2d at 439.

This quotation and the way the Bank has used it would indicate that the decision in the *Reeves* case was against the obligor and in favor of the finance company on the ground that the transaction there involved was a transfer and not a sale or other disposition under the UCC. The true result, however, was entirely different; the language quoted above was nothing more than a statement of the general rule obtaining in a proper application of a provision similar to § 8.9-504(5).

In the *Reeves* case, the trial court had granted summary judgment in favor of the finance company. The Nebraska Supreme Court reversed. The court pointed out that the retail installment contract employed in the case provided a space for assignment of the contract to a finance company "with a full repurchase agreement, but an alternate section entitled 'Assignment Without Recourse' was used when the assignment was made." The court noted further that the assignment to the finance company "was subject to a dealer agreement, *the terms of which [were] not in the record*" (emphasis added). Because conflicting inferences could be drawn as to whether the

---

[3] *Community Manage. Ass'n of Colorado Sp.* v. *Tousley*, 32 Colo. App. 33, 505 P.2d 1314 (1973); *Jefferson Corporation* v. *Marcano*, 60 Misc.2d 138, 302 N.Y.S.2d 390 (1969); *Rangel* v. *Bock Motor Co.*, 437 S.W.2d 329 (Tex. Ct. App. 1969); *Western Nat. Bank of Casper* v. *Harrison*, 577 P.2d 635 (Wyo. 1978).

finance company and the dealer had a guaranty or repurchase agreement, the court concluded that a material issue of fact existed "in regard to whether section 9-504(5), U.C.C., should be applied in [the] case" and that the award of summary judgment could not be sustained. 197 Neb. at 116, 247 N.W.2d at 439. The case was remanded for further proceedings.

In the present case, we face the same situation the Nebraska court faced in *Reeves*. The question whether the Bank's delivery of the mobile home to AMI constituted a "transfer" or a "disposition" turns upon the relationship between the Bank and AMI. The nature of this relationship depends upon the terms of the contract between these parties. Because the case was decided upon demurrer and the contract is not in the record, all we know of its terms is what Rhoten alleged in his motion for judgment, *viz.*, that it was a prior agreement "to insure [the Bank] against loss due to a default under the terms of the original contract for the mobile home." This is far too little upon which to base a finding as a matter of law that the contract was like a guaranty, endorsement, or repurchase agreement sufficient to render the delivery of the collateral to AMI a mere transfer under § 8.9-504(5) and to excuse the Bank from giving Rhoten notice.

We hold that the allegations of Rhoten's motion for judgment stated a cause of action under § 8.9-507(1) and that it was error for the trial court to sustain the Bank's demurrer and dismiss Rhoten's motion. The motion for judgment will be reinstated, and the case will be remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*