# Tony Woodward, et al.

## v.

# Resource Bank

Record Nos. 930112 and 930113

November 5, 1993

Present: All the Justices

*James M. Pickrell, Jr. (Kellam, Pickrell, Cox & Tayloe*, on brief), for appellants Tony Woodward and Susan K. Woodward.

*S. Geoffrey Glick (Robert L. Samuel, Jr.; Clark & Stant*, on brief), for appellant Donald N. Tillman.

*William R. O'Brien* for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal involving creditors' rights, we consider whether a creditor is entitled to recover a deficiency judgment against guarantors of the underlying debt who were not notified of the sale of the collateral, but who had signed pre-default waivers of such notice.

Resource Bank filed this action against Jacob J. Batis and Janet L. Batis seeking to enforce an obligation in the amount of $90,000, and against Donald N. Tillman, Susan K. Woodward, and Tony Woodward seeking a deficiency judgment of $45,000 and attorney's fees and costs. The Batises were not served with the motion for judgment. The trial court, sitting without a jury, considered the evidence at a trial on the merits and entered a judgment against Tillman and the Woodwards in favor of Resource Bank. We awarded appeals to Tillman and the Woodwards.

The relevant facts are not in dispute. Jacob and Janet Batis operated a gasoline supply station and convenience store in Portsmouth. They desired to expand their operations and purchased a gasoline supply station and convenience store in Virginia Beach, referred to as the Pavilion store. They obtained the necessary financing from Resource Bank and executed a note in the amount of $80,800 with the Bank. The note was secured by a second deed of trust on the Batises' residence and security interests in the inventory and equipment located at the Pavilion store.

Subsequently, the Batises decided to purchase another gasoline supply station and convenience store located in Virginia Beach, referred to as the Newtown store. Tryall, Inc. owned the Newtown store. Donald N. Tillman and Tony Woodward were the principal shareholders of Tryall, Inc. The Batises obtained financing from Resource Bank to purchase the Newtown store from Tryall, Inc. The Batises executed a note in the amount of $90,900 and signed a security agreement dated July 11, 1990, which granted to Resource Bank security interests in equipment and inventory located at the Newtown, Pavilion, and Portsmouth stores.

Resource Bank required that the Woodwards and Tillman sign a guaranty for $45,000 of the $90,900 note. Paragraph 7 of the guaranty provides in part that:

> The liability of the [guarantors] shall not be affected or impaired by any of the following acts or things (which the Bank is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty without notice to or approval by the undersigned): . . . (iii) . . . any failure to . . . give any required notices.

The Batises failed to pay the amounts due on the notes and H. Gregory Kilduff, president of Resource Bank, notified them by letter in November 1991 that the notes were in default. Kilduff also forwarded letters to Tillman and the Woodwards informing them that the Batises had defaulted on the note for $90,900 and demanded that Tillman and the Woodwards honor their respective guaranties.

Sometime between November 21, 1991 and January 21, 1992, Resource Bank sold the collateral which secured the notes. Resource Bank did not give any notice of the sale of the collateral to the Batises, Tillman, or the Woodwards.

The assets of the Portsmouth store were sold to the owner of a gasoline station for the sum of $10,000. A few days thereafter, an air pump machine, which was also located in the Portsmouth store and in which Resource Bank had a security interest, was sold for the sum of $250. The equipment and other assets of the Portsmouth store, however, had been valued by Resource Bank at $59,922. At trial, Mark Malbon, an operator of a gasoline supply station and convenience store, testified that the value of the collateral located at the Portsmouth store was at least $75,000. Resource Bank also sold the inventory of the Pavilion store to the owner of a gasoline station for $2,500. Resource Bank had placed a value of $14,734 on that inventory.

Tillman and the Woodwards argue that as guarantors of the note the Batises executed with Resource Bank, they are ''debtors'' within the meaning of Code §§ 8.9-105(1)(d) and 8.9-504(3) and, therefore, were entitled to notice of the sale of collateral notwithstanding the fact that they had signed pre-default waivers of notice. Resource Bank argues, however, that Tillman and the Woodwards waived their right to notice of the sale of collateral when they signed the pre-default waivers. We disagree with Resource Bank.

■ Code § 8.9-105(1)(d) defines a "debtor" as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral." Code § 8.9-504(3) states, in relevant part:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

In *Rhoten* v. *United Virginia Bank*, 221 Va. 222, 269 S.E.2d 781 (1980), we considered whether guarantors were debtors within the meaning of Code §§ 8.9-105 and -504(3). There, Michael L. Rhoten filed an action against United Virginia Bank seeking damages for an allegedly wrongful disposition of a mobile home. He relied upon Code § 8.9-507(1), which gives a debtor the right to recover from any secured party any loss caused by failure to give the debtor notice of the disposition of the collateral that is the subject of the security interest.

Rhoten purchased a mobile home from a dealer and executed an installment sales security agreement in which he granted the dealer a security interest in the mobile home for the unpaid balance. The dealer assigned the contract to United Virginia Bank without recourse. Rhoten, with the consent of the bank, transferred his interest in the mobile home to Preston and Helen Rickman. In the agreement, Rhoten and the Rickmans jointly and severally promised to pay the bank the balance due on the contract. The Rickmans defaulted in their payments to the bank, and the bank repossessed the mobile home and disposed of it without giving Rhoten notice. It was undisputed that Rhoten was a comaker or guarantor of the contract.

■ United Virginia Bank argued that Rhoten was not a debtor within the meaning of Code §§ 8.9-105(1)(d) and -504(3). Rejecting the bank's argument, we stated:

> [Code §] 8.9-504(2), makes a debtor ''liable for any deficiency.'' A comaker or guarantor may be held liable for a deficiency. The amount of a deficiency is determined by deducting the proceeds of sale or other disposition of collateral from the balance due on the obligation. Hence, a comaker or guarantor has a vital interest in maximizing the proceeds of sale or other disposition and in reducing his potential liability for a deficiency.
>
> A comaker or guarantor, however, cannot protect his interests without notice of an impending sale or other disposition of collateral. We believe, therefore, that the context in which the term ''debtor'' is employed in § 8.9-504(3) requires that the term be interpreted to include both the owner of the collateral and the obligor, if they are not the same person.

221 Va. at 228, 269 S.E.2d at 784-85. We see no reason to depart from our holding and analysis in *Rhoten* and, accordingly, we hold that Tillman and the Woodwards, as guarantors, are debtors under Code §§ 8.9-105(1)(d) and 8.9-504.

■ As referenced above, Code § 8.9-504(3) requires the secured party to give notice of the sale of collateral to the debtor if he has ''not signed after default a statement renouncing or modifying his right to notification of sale.'' Code §§ 8.9-501 through -507, which contain provisions pertaining to defaults in secured transactions governed by the Uniform Commercial Code, confer upon the secured party and the debtor certain rights and duties when the debtor is in default under a security agreement. Upon default, the secured party has the right to seize and sell the collateral, and the debtor has a right to notice of the disposition of the collateral, unless he signed a waiver after default.

■ These Code provisions strike a balance between the right of the creditor to protect his financial interests and the right of the debtor to protect his interest in maximizing the proceeds of the sale or other disposition. Applying the plain language of § 8.9-504(3), we hold that the notice provision contained therein may not be waived before the occurrence of a default. Neither the Woodwards

nor Tillman signed a statement renouncing their rights to notification after the Batises defaulted and, therefore, Resource Bank was required to give notice of the sale of the collateral.

Furthermore, many appellate courts that have considered this issue have held that their states' respective counterparts to Code § 8.9-504(3), which is a part of the Uniform Commercial Code, do not permit the debtor to waive his right to notice of sale of collateral before an event of default. *Norton* v. *National Bank of Commerce of Pine Bluff*, 398 S.W.2d 538, 541 (Ark. 1966); *Barnett* v. *Barnett Bank of Jacksonville, N.A.*, 345 So. 2d 804, 804-06 (Fla. Dist. Ct. App. 1977); *Branan* v. *Equico Lessors, Inc.*, 342 S.E.2d 671, 674 (Ga. 1986); *Commercial Discount Corp.* v. *Bayer*, 372 N.E.2d 926, 928-29 (Ill. App. Ct. 1978); *Clune Equip. Leasing Corp.* v. *Spangler*, 615 S.W.2d 106, 108 (Mo. Ct. App. 1981); *Borg-Warner Acceptance Corp.* v. *Watton*, 338 N.W.2d 612, 615-16 (Neb. 1983); *Chase Manhattan Bank, N.A.* v. *Natarelli*, 401 N.Y.S.2d 404, 410-11 (N.Y. Sup. Ct. 1977); *Gregory Poole Equip. Co.* v. *Murray*, 414 S.E.2d 563, 567 (N.C. Ct. App. 1992).

Next, Tillman and the Woodwards contend that ''[w]hen a secured creditor fails to give the notice of sale as required by the Code, a presumption exists that upon default the value of the collateral is equal to the balance of the debt, and that, absent proof to the contrary, such creditor is not entitled to any deficiency judgment against the debtor.'' Resource Bank contends that the sale of the collateral was commercially reasonable and that the trial court found that there was no bad faith, hence, it is entitled to a deficiency judgment.

 Code § 8.9-504(3) requires that every aspect of the disposition of the collateral, including ''the method, manner, time, place and terms must be commercially reasonable.'' The creditor has the burden of proving commercial reasonableness. *American Nat'l Bank* v. *Perma-Tile Roof Co.*, 246 Cal. Rptr. 381, 384-85 (Cal. Ct. App. 1988); *Wood* v. *First Nat'l Bank of Commerce*, 305 S.E.2d 852, 853 (Ga. Ct. App. 1983); *McChord Credit Union* v. *Parrish*, 809 P.2d 759, 761 (Wash. Ct. App. 1991). Resource Bank did not meet its burden because the failure to give the required notice of sale of collateral made the sale commercially unreasonable.

We have not previously considered the effect, if any, of a creditor's failure to give notice of the sale of the collateral as required by Code § 8.9-504(3) when the sale is deemed commercially unreasonable. Some appellate courts have held that failure of the secured

party to comply with the notice of sale provisions bars the secured party from the recovery of any deficiency judgment. *Braswell* v. *American Nat'l Bank*, 161 S.E.2d 420, 422 (Ga. Ct. App. 1968); *Camden Nat'l Bank* v. *St. Clair*, 309 A.2d 329, 332 (Me. 1973); *DeLay First Nat'l Bank & Trust Co.* v. *Jacobson Appliance Co.*, 243 N.W.2d 745, 748 (Neb. 1976); *Aimonetto* v. *Keepes*, 501 P.2d 1017, 1019 (Wyo. 1972). We decline to adopt this rule because we believe that it is unduly harsh and punitive.

■ Rather, we hold that if the secured party fails to give notice of the sale of collateral as required by Code § 8.9-504(3), then a rebuttable presumption arises that the value of the collateral equals the indebtedness secured, thereby extinguishing the debt. This rebuttable presumption may be overcome if the secured party proves that the sale price represents the fair and reasonable value of the collateral. *Universal C.I.T. Credit Co.* v. *Rone*, 453 S.W.2d 37, 39 (Ark. 1970); *Levers* v. *Rio King Land and Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977); *Hodges* v. *Norton*, 223 S.E.2d 848, 851-52 (N.C. Ct. App. 1976).

■ The rationale underlying this rebuttable evidentiary presumption is clear. The secured party, who has the burden of proving his right to a deficiency judgment, had acquired possession of the collateral and conducted the sale. Thus, the secured party is in the best position to present evidence of the fair market value of the collateral. Applying this rule here, we hold that a rebuttable presumption arose that the value of the collateral that Resource Bank sold equalled the amount of the debt because Resource Bank failed to give the required notice to Tillman and the Woodwards. Resource Bank did not present any evidence at trial to rebut this presumption and, therefore, the indebtedness is extinguished.

■ Finally, Resource Bank contends that Tillman and the Woodwards are estopped from asserting any defenses related to their status as guarantors. The Bank sent a demand letter to Tillman after the Batises had defaulted, and Tillman wrote a letter to the Bank informing it that he believed the guaranty was null and void and refused to honor it. The Woodwards also wrote a letter to Resource Bank informing it that ''[o]n the advice of our counsel . . . we believe the guarantee which we signed . . . to be invalid.'' The Bank says that ''[t]o now, espouse the position that [Tillman and the Woodwards] should be provided protection as guarantors would be an inconsistent position which each should be estopped from holding.''

We reject the Bank's position because our review of the record reveals that the Bank failed to show estoppel by "clear, precise, and unequivocal evidence." *Harris* v. *Criterion Ins. Co.*, 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981). As we have said:

Estoppel, as a doctrine in equity, is the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other.

*Employers Commercial Union Ins. Co. of America* v. *Great American Ins. Co.*, 214 Va. 410, 412, 200 S.E.2d 560, 562 (1973). The record reveals that the Bank did not intentionally withhold notice of sale of the collateral because of the guarantors' disavowals of liability.

Accordingly, we will reverse the judgment of the trial court, and enter final judgment on behalf of Tillman and the Woodwards.

*Reversed and final judgment.*