62 F.3d 1415
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
THE STATE BANK OF THE ALLEGHENIES, Plaintiff-Appellee,
v.
H. Gilman HUDNALL, Defendant-Appellant.
 No. 94-1809.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1995
Decided Aug. 9, 1995
 
 ARGUED: Jay Elliott Loeb, GERSHON, OLIM, KATZ & LOEB, Altanta, GA, for Appellant. Melissa Warner Scoggins, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for Appellee. ON BRIEF: Eugene E. Derryberry, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for Appellee.
 Before WILKINSON and WILLIAMS, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this case we must ask whether an out-of-state guarantor is subject to the personal jurisdiction of a federal court sitting in diversity in Virginia, and if so, whether the district court appropriately found the guaranty's provisions binding. We affirm the judgment of the district court, holding that the guarantor in this case is subject to personal jurisdiction and that the guaranty's provisions were properly applied by the district court.
 
 I.
 
 2
 In 1989, George R. Hudnall, a resident of Virginia, went to The State Bank of the Alleghenies ("bank") to obtain a loan for $200,000 (later $250,000) to finance his Covington, Virginia professional dry cleaning business, Hudnall Enterprises. George Hudnall offered the bank a first deed of trust on both the business and his personal residence, but the bank deemed these assets insufficient security. Later that year, the Small Business Administration refused to insure the loan.
 
 
 3
 George then sought a guaranty from his brother, appellant H. Gilman Hudnall, an attorney practicing in Atlanta, Georgia. The bank informed George that before his brother's guaranty could be accepted as additional security, the bank would need to review Gilman's financial statement. George contacted his brother, who then provided his financial statement for the bank.
 
 
 4
 After further negotiations, on January 13, 1990, the bank tentatively approved a $250,000 loan provided that Gilman Hudnall would sign an unconditional guaranty and also, that George Hudnall would secure an additional $50,000 in collateral. On January 18, 1990, Gilman Hudnall executed his unconditional guaranty. The additional col lateral came in the form of a $50,000 deed of trust executed on January 22, 1990 by George's friends, John and Bamma Williams. The Williams' secured guaranty, however, was conditional upon exhaustion of collection against Gilman Hudnall.
 
 
 5
 In June, 1991, Hudnall Enterprises and George Hudnall filed Chapter 7 petitions in the bankruptcy court. The bankruptcy court approved a settlement in December, 1991, and on January 15, 1992, Hudnall Enterprises conveyed its interest in the real estate, including the dry cleaning equipment, to a third party. This transfer, together with the sale of George's residence, satisfied $137,000 of the outstanding debt. Subsequently, the bank sold Hudnall Enterprises' four vehicles for a total of $9,000.
 
 
 6
 After Gilman Hudnall denied liability for the remaining amount due on the loan, the bank initiated the instant action in Allegheny County Circuit Court seeking judgment against Hudnall in the amount of $151,161.35 plus interest, costs, and fees. Hudnall removed the action to federal district court based on diversity of citizenship and then sought dismissal for lack of personal jurisdiction. The district court denied his motion. After a bench trial, the court entered judgment for the bank in the amount of $159,934.47, plus 12% per annum interest on the unpaid principal balance and reasonable attorney's fees of $31,000. Hudnall now appeals.
 
 II.
 
 7
 Appellant claims that he is not subject to the personal jurisdiction of the district court. We disagree. In determining whether the exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum," Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). For jurisdiction to be proper, "it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).
 
 
 8
 As the Supreme Court has repeatedly stressed, we do not approach the "minimum contacts" analysis in diversity cases with an aim to propound any mechanical test, and we recognize that the facts and circumstances of each case are determinative. Burger King, 471 U.S. at 478-79. While the mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum, see id. at 478, the nature and level of appellants contacts with Virginia are sufficient to establish jurisdiction in this particular case.
 
 
 9
 Burger King, of course, held that personal jurisdiction attached to the Michigan franchisees involved as defendants in a Florida lawsuit. It was appropriate for the district court to recognize that the facts of this case presented an even closer personal relationship between the out-of-state guarantor and the in-state borrower than was present among any of those involved in the Burger King transactions. The fact that the appellant guarantor and the in-state borrower shared a close familial bond at least posed the potential that the guarantor stood to gain from his sibling's business success. At a minimum, the presence of a close relative in Virginia whose commercial venture would benefit from execution of the guaranty brought the out-of-state party into a closer relationship with the forum state than might otherwise be the case. While we do not suggest that every personal guaranty between relatives establishes personal jurisdiction over the guarantor, neither can we exclude the presence of such a relationship as one of multiple factors in the jurisdictional equation.
 
 
 10
 In this case, it appears further that George Hudnall acted with at least apparent authority as Gilman Hudnall's agent. The guarantor himself called the bank in Virginia at least once to inquire about collateral, provided his financial statement for the Virginia banks consideration, and ultimately signed a Virginia loan guaranty for a Virginia business. Accordingly, we find sufficient contacts between the guarantor and Virginia to satisfy the requirements of personal jurisdiction.
 
 
 11
 Having found the requisite connection between the guarantor and the forum, we now consider whether "fair play and substantial justice" favor the assertion of personal jurisdiction in Virginia. See Burger King, 471 U.S. at 476. Reasonableness and fairness are concepts incapable of precise definition, and, particularly in this area, "the shades are innumerable." Kulko v. California Superior Court, 436 U.S. 84, 92 (1978), quoting Estin v. Estin, 334 U.S. 541, 545 (1948). Here, because all essential witnesses, with the exception of the guarantor, were from Virginia, fair play was not offended when the suit went forward in a Virginia forum.
 
 
 12
 Given that the bank and the borrower were both in Virginia, and that the guaranty was recognized as a condition for the loan, the guarantor should have been on notice that his contacts were such that in the event of a loan default, litigation would likely take place in Virginia. Thus, the nature of the guarantors relationship with the forum "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " Burger King, 471 U.S. at 480, (quoting Hanson, 357 U.S. at 253; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980)). Looking at the totality of the circumstances, the factors of this case militate in favor of the assertion of personal jurisdiction, and it cannot be said that the district judge erred in finding it.
 
 III.
 
 13
 Appellant also contends that the manner in which Hudnall Enterprises' assets were sold should discharge him from his guaranty obligation. These claims are without merit. First, appellant argues that since the bank failed to give proper notice of the motor vehicle sale, there was a rebuttable presumption that the motor vehicles were worth the balance owed on the note and that the bank failed to rebut this presumption. However, the fair market value of the automobiles ($9,000) did not begin to approach the amount of the deficiency (approximately $160,000), and as the bank proved such market value by competent evidence, the bank could legitimately pursue payment from the guarantor. See Woodward v. Resource Bank, 246 Va. 481, 488, 436 S.E.2d 613, 617 (1993). As for the dry cleaning equipment, it, along with the rest of the business, was not transferred by the bank, but rather by Hudnall Enterprises. The district court correctly found that this was not a sale conducted under Article 9 of the Uniform Commercial Code, Va.Code Ann. Sec. 8.9-504(3), and therefore, the bank was under no obligation to comply with the statute's notice provisions.
 
 IV.
 
 14
 Appellant further claims that the bank's failure to inform him of two other transactions involving Hudnall Enterprises increased appellant's risk and should accordingly discharge his guaranty obligation. First, the bank's failure to inform appellant of the denial of his brother's Small Business Administration loan had no bearing on appellant's unconditional exposure, and it is improbable that appellant's decision would have been otherwise with knowledge of the SBA denial. It was also reasonable for the bank to conclude that appellant's brother had mentioned the SBA denial to him over the course of their conversations regarding the guaranty. As for appellant's second claim of increased risk, the bank's failure to inform appellant of the conditional nature of the Williams' guaranty did not increase appellant's risk because the Williams' guaranty was made subsequent to appellant's unconditional guaranty.
 
 V.
 
 15
 Appellant also objects to the award of $31,000 in attorney's fees. The guaranty, which appellant signed, obligated him to "all other sums payable with respect to the [n]ote," and the note itself states: "If suit is brought to collect this [n]ote, the[n]ote holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorneys fees." As appellant has offered us no reason to believe that the award of attorney's fees was excessive, we affirm.
 
 VI.
 
 16
 This case involves an unconditional guaranty signed by an attorney who was no novice in business affairs. The terms of the note and the guaranty were plain. The guaranty did not require the liquidation of assets, which benefitted appellant but which ironically forms the basis for much of his complaint. We find no merit in appellants' numerous assignments of error, and we accordingly affirm the judgment of the district court.
 
 AFFIRMED