# CIRCUIT COURT OF THE CITY OF RICHMOND

Tracy Lynn Rhoten,
Carol Rhoten,
and Glenn Rhoten

v.

Chevy Chase Savings Bank, F.S.B.

December 4, 1997

Case No. LC-435-1

BY JUDGE MELVIN R. HUGHES, JR.

In a two count motion for judgment, plaintiffs (Rhoten) seek a declaration of their rights and obligations as to the defendant, Chevy Chase Savings Bank (the bank) and a money judgment under § 8.9-507. The case revolves around an installment sales contract for the purchase of an automobile. The bank demurs to count 1, the count seeking a declaration, on the ground that plaintiffs have failed to state a cause of action; it also demurs to count 2, the count seeking a money judgment, on the ground that plaintiffs' own statements reveal that post repossession notice of sale of the automobile was given thus no right of action for money damages is stated. The court overrules the demurrer as to both counts.

In considering a demurrer, the court must accept as true the allegations made in plaintiff's motion for judgment with an eye toward determining

their legal sufficiency. *Lentz v. Morris*, 236 Va. 78 (1988). Accordingly, what follows is a summary of the facts alleged in the motion for judgment.

The three plaintiffs executed an automobile installment sales contract covering the purchase of a new automobile. The vehicle was to be used by plaintiff Tracy Rhoten, and plaintiffs Carol and Glenn Rhoten "signed the contract to enable their daughter in obtaining the purchase money loan for the motor vehicle [sic]."

In October 1995, Glenn and Carol learned that Tracy had failed to make all payments required by the contract. Glenn contacted the bank and arranged to pay the arrearage to avoid a repossession. The bank received and properly posted the payment on October 31, 1995. On November 24, 1995, the bank repossessed the vehicle. Tracy believes she received a letter from the bank notifying her of its intention to dispose of the vehicle. Glenn received the same notice, but it came after the disposition; Carol never received any notice. On January 24, 1996, the vehicle was auctioned at a public sale. Thereafter, on July 17, 1996, the bank notified Carol in writing of a deficiency claim of $12,619.13 after credit of the auction sales proceeds.

In the motion for judgment, the Rhotens contend that the bank failed to give any notice of the proposed disposition of the automobile to Carol and Glenn and none to Tracy as the notice given her only spoke of a private sale. They contend that lack of notice renders the sale commercially unreasonable creating a rebuttable presumption that the auction price equals the debt thus extinguishing it. They also seek the recovery of $6,334.24. This figure represents ten percent of the amount financed plus the finance charge under § 8.9-507(1). Again, plaintiffs' theory for recovery is the bank's improper disposition of the vehicle.

> § 8.9-507. *Secured party's liability for failure to comply with this part.* — (1) If it is established that the secured party is not proceeding in accordance with the provisions of this part, disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred, the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount

of the debt or the time price differential plus ten per cent of the cash price.

On demurrer, the bank contends that plaintiffs have only asserted affirmative defenses that would be applicable if it were pursuing the deficiency, which it has not chosen to do. Thus, no cause of action is stated. Second, the bank argues that the law does not require it to send each plaintiff a notice of public sale indicating the time and place of the sale.

The attachments to the motion for judgment show that the bank has made demand upon the plaintiffs for the deficiency owed. The letter provides a thirty-day period for repayment prior to filing suit to collect the deficiency. The bank's right to recover the deficiency is contract-based and is not provided for in the Uniform Commercial Code (UCC); however, the courts have not ruled uniformly on this issue. *See In re Bishop*, 482 F.2d 381, 385 (4th Cir. 1973). In any event, an actual controversy over the amount due under the contract exists between the parties.

Next, the bank asserts that it provided adequate notice of the sale. The UCC provides that the creditor must provide "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made . . . ." Va. Code § 8.9-504(3). While the defendant did send notice of the private sale to Tracy, this notification is insufficient to satisfy the statutory mandate. *All* co-owners and co-signers to the installment sales contract should have received notice of the public or private sale of the collateral.

The Supreme Court of Virginia has held that a co-maker or guarantor on a note is a "debtor" within the meaning of Va. Code §§ 8.9-105(1)(d) and 8.9-504(c)(3). *Rhoten v. United Va. Bank*, 221 Va. 222 (1980) (There is no familial relation between the parties in this case and the instant suit.). As such, the co-maker or guarantor must have notice upon "sale or other disposition" of collateral which is the subject of a security interest. *Id.* at 228. Such person has a vital interest in maximizing the proceeds of a sale or other disposition of the collateral and in thus reducing the potential liability for a deficiency. *Id.* It is impossible to protect the co-maker or guarantor's interest without receiving notice. *Id.*

In the case at bar, the plaintiffs co-signed an automobile installment sales contract. Each of them is a "debtor" within the meaning of § 8.9-105(1)(d); this provision defines debtor to include both the owner of the collateral and the obligors on the note. According to the pleadings, only one co-maker, Tracy, received notice of the impending private sale pursuant to § 8.9-504(c)(3). Glenn did not receive notice at his residence until

*after* the disposal of the vehicle. Carol never received any type of notice. Thus, as alleged, the bank has failed to comply with the statutory mandate to provide notice to all debtors upon the private sale of the collateral.

According to *Woodward v. Resource Bank*, 246 Va. 481 (1993), and Va. Code § 8.9-504(3):

> every aspect of the disposition of collateral, including the method, manner, time, place and terms must be commercially reasonable. The creditor has the burden of proving commercial reasonableness .... [F]ailure to give the required notice of sale of collateral [makes] the sale commercially unreasonable.

*Id.* at 487 (bank brought action against makers and guarantors of note to enforce obligation). Further, a finding of commercial unreasonableness gives rise to a rebuttable presumption that the value of the collateral is equivalent to the secured debts, thereby extinguishing the debtors' obligation. *Id.* The presumption of commercial unreasonableness may be rebutted if the secured party establishes that the sale price represents the "fair and reasonable value of the collateral." *Id.* However, if the court finds that the creditor has failed to sustain its burden of proof, then the debtor is entitled to recover at least the credit service charge plus ten percent of the principal amount of the debt. Va. Code § 8.9-507(1).

Here, the bank failed to give each of the debtors sufficient notice of the private sale. This statutory breach makes the sale commercially unreasonable. The bank may rebut this presumption at trial. If it fails to sustain this burden, the plaintiffs are entitled to recover the amount of $6,334.24 plus costs.

The bank cites *In re Parrish*, 110 Bankr. 229 (Bankr. W.D. Va. 1989), for the proposition that if "the only failure of the secured creditor was lack of notice to the debtor prior to the sale," such an omission is less likely to result in a commercially unreasonable sale than the defects determined in *In re Bishop*, 482 F.2d 381 (5th Cir. 1973). In *Bishop*, the notice of sale of a repossessed boat was returned unclaimed, the sale was not advertised in any newspaper, no signs were posted announcing the event, and no one was invited to attend. *Id.* at 384. The collateral was purchased for $1,500 by the creditor and subsequently resold for $2,000. *Id.* The creditor claimed a deficiency of $1,088 including costs. *Id.* at 383. Finding the sale commercially unreasonable, the court barred the secured creditor from recovering a deficiency.

In comparison to the multiple omissions in *Bishop*, the *Parrish* debtor was only subjected to insufficient notice. The debtor did not offer any evidence at trial to show that he intended or was so situated to protect his interests at the sale had he received notice. *Parrish*, 110 Bankr. at 232. In addition, the debtor's testimony revealed that he had experienced difficulty with the truck since it was purchased. *Id.* Similar to the rebuttable presumption in *Woodward*, the *Parrish* court imposed a "no harm, no foul" rule to shift the burden to the creditor to show that the credit applied to the debt was equal to the fair market value of the collateral. *Id.* The creditor met its burden and the deficiency was allowed.

Here, the plaintiffs fall mid-way in the spectrum between *Bishop* and *Parrish*. While Carol and Glenn did not receive timely notice of the collateral sale, Tracy admits that she probably did receive the bank's letter on the matter. The pleadings do not reveal whether the sale was advertised or invitations were issued. On the other hand, the court may infer that Carol and Glenn were situated so as to protect their interests in the collateral at the sale. There is no allegation that the Rhotens experienced difficulty with the car such that they were indifferent to its disposition, as was the case in *Parrish*. The outcome of the "no harm, no foul" analysis will depend on the evidence of commercial reasonableness provided at trial.

For these reasons, the demurrer is overruled.